## Nyce's Estate.

Testator by his will ordered that of the money in his house or due him on obligation at his decease, his executors should put the sum of £500 on interest to be well secured, and that his wife might draw the interest thereof annually during her natural life, and then over. They invested that sum in stock of the Bank of the United States, which depreciated during the life of the widow and afterwards, so that it was nearly lost. *Held*, that the executors were liable to the legatees over for the loss.

A guardian of minor children entitled to part of such legacy, by merely giving an opinion that it was a safe investment, and purchasing it for the executors, but not assenting thereto, does not exonerate the executors from liability for the portion of such minor children in the legacy.

Besides the general introductory clause, the will proceeded, " As also my household furniture to be at her own disposal which I may have at my decease, and the remainder of my personal estate, if any shall be, not hereinbefore or hereinafter specified, to be equally divided to and among my grandchildren, share and share alike, excepting what is herein reserved and bequeathed." *Held*, that the surviving grandchildren after the widow's death took the £500, and the testator did not die intestate as to it.

THIS was an appeal by James Everhart, John Templin and Levi Nyce, executors of John Nyce, deceased, from the decree of the Orphans' Court of *Chester* county on the settlement of their accounts.

John Nyce died in 1826, leaving a will dated in 1825, by which he made the following devises and bequests: " As for what worldly estate wherewith it hath pleased God to bless me with in this life, I give and dispose of the same as followeth; and first that my just debts and funeral expenses be paid as soon as conveniently may be after my decease out of my personal estate. Second, I give and bequeath unto my grandson, Levi Nyce, $100 lawful money out of my personal estate, immediately after my decease: and further, I do order of what money in my house or money *in*due me on obligation or otherwise at my decease, that my executors put the sum of £500 on interest to be well secured, and so that my well-beloved wife may draw the interest thereof annually during her natural life, as also my household furniture to be at her own disposal, which I may have at my decease—and the remainder of my personal estate, if any shall be, not hereinbefore nor hereinafter specified, to be equally divided to and among my grandchildren, share and share alike, excepting what is herein reserved and bequeathed." He then gave his wife various privileges in rooms, grain, fruit, &c., out of his farm; two lots of ground particularly described, for the use of his grandson, Samuel Nyce, and the residue of his lands to his grandsons, Levi and

William Nyce, to be particularly laid off. He made various other provisions as to his real estate, and gave a legacy of $100 to his daughter, payable out of his personal estate, and made the above-named persons executors. He subsequently made a codicil, reciting that " whereas, I have, by said will, bequeathed my household furniture to my well-beloved wife to be at her own disposal, the which I do now revoke, and it is now my will that she shall have the use of them during her natural life, and that after her decease, that they be equally divided among my grandchildren, share and share alike."

Two questions arose in the court below. 1. Whether the executors were responsible for the sum of £500 which they had invested in the year 1829 in stock of the Bank of the United States, and which had since depreciated so as to be of little or no value. 2. Whether the testator died intestate as to this sum of £500, the interest of which was to be paid to his widow during her life, or whether it passed under the will.

The facts and circumstances of the case are fully stated in the opinion of the court below, delivered by Bell, President, which was as follows:

The testator by his last will, proved November 27th 1826, devised *inter alia* as follows: " I do order of what money in my house or *in*due me on obligation or otherwise at my decease, that my executors put the sum of £500 on interest, to be well secured, and so that my well-beloved wife may draw the interest thereof annually during her natural life," &c., and appointed the accountants, executors.

After the death of the testator and pending the life of the widow, in the year 1829, the executors vested the sum of £500 in shares of the capital stock of the Bank of the United States, a banking company incorporated by Act of Congress. This investment was made with the approbation of Samuel Shafer, guardian of three of the grandchildren of the testator, who, with others, were entitled to the principal sum after the death of the widow. Mr Shafer testifies that he considered it a safe investment at the time, and in fact made the purchase at the request of the executors, but adds, that he did not consider he was assuming any responsibility by recommending the investment. During the lifetime of the widow, the value of this stock greatly depreciated and has continued to depreciate, so that at this time it is worth very little if anything. The widow being dead, the parties in interest have called on the executors to account, and under exceptions filed to the report of auditors, who charged them with the whole amount laid out in the purchase of these shares, the question is presented whether, under the circumstances, these trustees are liable to make good the loss which has happened from the fall of this stock.

It is said to be the harshest demand that can be made in equity, to compel a trustee to make up a deficiency, where the money has

[Nyce's Estate.]

not come into his hands. In such a case, equity will not charge him unless he has been guilty of negligence so gross as almost amounts to fraud. *Pim* v. *Downing*, (11 · *Serg. & Rawle* 66); *Johnson's Appeal*, (12 *Serg. & Rawle* 317); *Konigmacher's Appeal*, (1 *Penn. Rep.* 213). If he exercise so much caution in respect to the trust fund, as a prudent man would in regard to his own money, and a loss happen, equity will excuse him. But all the authorities distinguish between such a case and that where the trustee has actually received the fund. He is then bound carefully to secure the money which comes to his hands, and if he fail to do so, and a loss happens, he is responsible. What shall be such apparently adequate security as will excuse a trustee, has been the subject of some diversity of opinion; but it now seems to be agreed that the personal security of an individual is insufficient, *Ryder* v. *Bickerton*, cited in *Walker* v. *Symonds*, (3 *Sw.* 81. note *a*); *Adye* v. *Feuilleteau*, (1 *Cox* 25;) *Holmes* v. *Dring*, (2 *Cox* 1); *Pim* v. *Downing; King* v. *King*, (3 *Johns. Ch. Rep.* 552); *Smith* v. *Smith*, (4 *Johns. Ch. Rep.* 281), unless the trustee be authorized by the instrument creating the trust to lend on such security: and it is settled, in England, that a trustee may not invest the trust fund in the stock of any private company, as South Sea Stock, Bank Stock, &c.; for the capital depends upon the management of governors and directors, and is subject to losses, *Lewin on Trusts* 308), and because chancery does not lay out or leave property in bank stock; and what the court will decree, it expects from trustees and executors. *Howe* v. *Earl of Dartmouth*, (7 *Vez.* 150). And it is said, that in the absence of any express power to do otherwise, the only unobjectionable investment is in one of the government or bank annuities: for here, as the directors have nothing to do with the principal, but merely superintend the payment of the dividends and interests till such time as the government may pay off the capital, it is not in their power by mismanagement or speculation to hazard the property of the shareholder. Per Lord HARDWICK, in *Trafford* v. *Boehm*, (3 *Atk.* 444). The recent history of banking in this country shows the value of this reason, and almost compels us to the conclusion that here, as it seems to be considered there, the capital stock of a bank is little, if any better than the mere personal security of an individual.

The general rule in the English Chancery is, that a trustee will be protected only where he invests in such securities as the court would decree on application. So far has this rule been extended, that it has been questioned whether it was safe for an executor to lay out money on a real security, and one that there was no ground at the time to suspect, *Brown* v. *Litton*, (1 *P. Wms.* 141); though the better opinion seems to be, that he would be protected in case of loss. *Knight* v. *Earl of Plymouth*, (1 *Dick.* 126); *Pocock* v. *Reddington*, (5 *Vez.* 800). To invest our Orphans' Courts with a power of direction similar to that exercised by Chancery,

[Nyce's Estate.]

it is enacted by the Acts of the 18th February 1824, and 29th March 1832, that wherever an executor, administrator, guardian or trustee, has in his hands any money, the principal or capital whereof is to remain for a time in his possession, or under his control, and the interest, profits or income thereof only is to be paid away, such trustee may present his petition to the Orphans' Court of the proper county, stating the circumstances of the case, and the amount or sum of money which he is desirous of investing: whereupon it shall be lawful for the court, upon hearing and due proof of the circumstances, to make an order directing the investment of the said money in the stock or debt of the United States, or in the debt of the Commonwealth of Pennsylvania, or in the debt of the city of Philadelphia, or in real security; and in case the money be invested in conformity with such direction, the trustee shall be exempted from all liability for loss on the same, in like manner as if the investment had been made in conformity with a similar direction in the wills or other instruments creating the trust, or by a law of this State.

It is not now necessary to decide whether, since the enactment of these statutes, a trustee, with general authority, would be justified in loaning the trust fund on any other security than those pointed out in the Acts, as I am of opinion that the will of John Nyce conferred on the accountants only a limited or restricted power as to the nature of the security on the faith of which they were to put out the fund of £500. If this be so, and they have selected a security of a different nature, it is not denied but that they did so on their own responsibility, and at their own risk, and must suffer for the loss which has ensued.

In endeavouring to ascertain the intention of the testator in that part of the will under consideration, we must take the language used in its common and ordinary acceptation—in that sense in which it is received by the mass of the community in which the testator resided. The money was to be put " on interest, to be well secured, so that my well-beloved wife may draw the interest thereof annually." When it is recollected that in our agricultural districts, and among our farmers, the phrase " putting out money at interest" means to loan money at the legal rate of interest, on the security of a mortgage or 'judgment, and when any other mode of investment is contemplated, a different phraseology is employed, we cannot but understand the testator to have had in his mind's eye a loaning on real estate, and in no other mode. It was to be " at interest," and every one understands this to mean " legal interest :" it was to be " well secured," and we all know what is meant by this term in the apprehension of our farmers, unengaged in speculation, trade or manufactures; and this interest was to be received by his widow annually, according to the usual and almost universal practice in the country, of stipulating for the payment of interest of money loaned on bond or mortgage. But

[Nyce's Estate.]

it has been ingeniously argued that purchasing bank or other stocks yielding a dividend, is only another mode of putting out money at interest, and, therefore, taking the terms literally, these executors have not overstepped the law of the trust. But, setting aside the words " to be well secured," which carry with them a peculiar and emphatic meaning, the answer is, that, in common parlance, neither among agriculturists, traders, or dealers in stock, do the terms " put out on interest" convey the idea of a purchase of bank or other corporation shares; and it has already been seen that in construing instruments, and more particularly wills, we must assign to the language used the meaning it bears as employed in every-day and ordinary communication, unless indeed where strictly technical phrases are used. Applying this rule to the clause of the will under consideration, I think no candid mind can hesitate to arrive at the conclusion that the intent of the testator was that the £500 should be secured by mortgage or judgment on realty; and these executors having failed to do so, must, as already intimated, make good the loss. This may be, and doubtless is, a hard case, as I have no hesitation in believing that the accountants acted in good faith, under the full conviction that the stock at the time of their purchase was worth all they paid for it; but they took this risk upon themselves, and must bear the consequences of a mistake committed in common with many unfortunate and suffering persons.

But it is objected that at least the accountants ought to be allowed a credit to the amount of the interest in the £500 owned by the wards of Samuel Shafer. Without inquiring how far an express assent or request by Mr Shafer, as guardian, to invest in the stock of the bank, would have released the executors from their obligation to follow strictly the directions of their testator, and exonerated them from their liability to his wards, it is sufficient to say that I do not understand from the testimony that any such assent was given, or request made. Mr S. only says that he was consulted as to the purchase; that he considered it a safe investment at the time, and that the purchase was made with his approbation; but expressly repudiates the idea, that in recommending the investment he assumed any responsibility. All this amounts to nothing more than that he entertained and expressed an opinion as to the safety of the contemplated investment, or, if you please, recommended it; but by no means amounts to an agreement made by him on the part of his wards, that the money should be so disposed of. If such an agreement would exonerate the accountants, surely nothing short of it can have such effect. They were not bound by the guardian's opinion, or by his recommendation; and if they chose to rely on the one, or follow the other, they did so at their own risk. This view renders it unnecessary to decide the point made on the argument, whether the grandchildren of the testator take any, and if so, what interest under the will? Where-

[Nyce's Estate.]

fore the exceptions taken on the part of the accountants to the report of the auditors are overruled, and the report in this particular is confirmed.

William Nyce also excepts to the report, that the auditors ought to have charged the trustees with interest on the trust fund in their hands from the death of the widow of the testator, January 28th, 1840. This position is too plain to admit of dispute, and it was accordingly conceded in the argument that if they are liable for the principal sum, they are also liable for legal interest thereon from the time the grandchildren became entitled to it. Wherefore the exception taken by William Nyce is sustained, and it is accordingly decreed and ordered that there be added to the sum of $1356.83, (the balance reported by the auditors), the sum of $142.45, interest for one year and nine months, making an aggregate sum of $1499.28, balance decreed to be in the hands of the accountants.

2. The contest, in this case, involves the question whether the testator died intestate, as to the sum of £500, the interest of which was to be paid to his widow during his life, or whether it passes under his will? It is impossible to consider this will as a whole, as we are bound to do, without being forced to the conclusion that, by it, the testator intended to dispose of all his estate, real and personal. By the introductory clause he declares, "As for what worldly estate wherewith it hath pleased God to bless me with in this life, I give and dispose of the same as followeth." This, although not sufficient, of itself, to carry an estate or legacy clearly omitted, is strong evidence of a general intent not to die intestate as to any portion of the party's estate. But, in addition to this, we have the laboured and detailed provisions of this instrument, which strongly manifest the anxious desire of the testator, to distribute all his property, real and personal, equally among his grandchildren, after making provision for the comfort of his wife, and bequeathing small legacies to his daughter Catharine Templin, and grandson Levi Nyce. It is true, that although the intention may have been entertained, if it be not expressed by apt provisions in the will, we cannot give effect to it, for *voluit sed non dixit* is not enough. *Bradford* v. *Bradford*, (6 *Whart*. 244). To entitle a claimant to a legacy, it must be granted by express words, or by probable implication; *Weyerbach* v. *Weyerbach*, (5 *Whart*. 583); and if neither are to be found within the four corners of the will, the claim must fail. But is there not an express bequest of the £500 in question contained in this will? After the introductory clauses already noticed, and a direction for the payment of debts and funeral expenses, the testator declares: "I give and bequeath unto my grandson Levi Nyce, $100, lawful money, out of my personal estate, immediately after my decease; and further I do order of what money in my house or money *indue* me on obligation or otherwise at my decease, that my executors put the

sum of £500 on interest, to be well secured, and so that my well-beloved wife may draw the interest thereof annually during her natural life, as also my household furniture to be at her own disposal, which I may have at my decease, and the remainder of my personal estate, if any shall be not hereinbefore nor hereinafter *specified*, to be equally divided to and among my grandchildren, share and share alike, *excepting what is herein reserved and bequeathed.*"

A bequest of the residue, or remainder of personal estate, or words of similar import, gives to the legatee everything which may accrue by accident or contingency, and which, at the testator's death, turns out not to be specifically disposed of. *Crooke* v. *De Vandes*, (9 *Vez.* 197); *Duhamel* v. *Ardovin*, (2 *Vez.* 162); *Jackson* v. *Kelly*, (2 *Vez.* 285); *Devese* v. *Pontet*, (1 *Cox* 188). So broad is the operation of a residuary clause, that it carries not only what the testator had at the time of making his will, but whatever personalty he dies possessed of not otherwise bequeathed; *Bacon's Abr., tit. Leg., B.* 3; 1 *Salk.* 237; 2 *Vern.* 688; 1 *P. Wms.* 424; and this rule is carried so far, that if a bequest be void, or if a legatee dies in the lifetime of the testator, or is incapable of taking, or if the property is given on a contingency which does not happen, the legacy, in all these cases, falls into the residue, and goes to the person to whom that is given. *Durour* v. *Motteux*, (1 *Vez.* 320); *Shanley* v. *Baker*, (4 *Vez.* 732); 1 *Vez.* 141; *Ambler* 580; 15 *Vez.* 415, 417; *Brown* v. *Higgs*, (4 *Vez.* 708); *Duke Marlborough* v. *Ld. Godolphin*, (2 *Vez.* 61); *Cambridge* v. *Rous*, (8 *Vez.* 12); *Roberts* v. *Cooke*, (16 *Vez.* 451); *Ward on Leg.* 30, 31. This is, in general, the legal effect of such a bequest, and will always prevail, unless an intention be manifested to confine its operation to a particular fund, or specific portions of property, or the testator employs expressions showing a determination to restrict it to a more limited sense; as if he bequeaths as *residuum*, " all things not before bequeathed," or directs that legacies which may fail shall not fall into the residue, or reserve for further disposition, by codicil, certain things which he subsequently neglects so to dispose of. *Wilde* v. *Holtsmeyer*, (5 *Vez.* 811); *Green* v. *Scott*, (1 *Vez. Jun.* 282); *Cook* v. *Oakley*, (1 *P. Wms.* 302); *Attorney-General* v. *Goulding*, (2 *Bro.* 428); *Devese* v. *Pontet*, (1 *Cox* 188); *Sadler* v. *Turner*, (8 *Vez.* 617). Upon these principles, the sum of £500, part of the testator's personal estate, not being specifically disposed of by the will before us, will go to the residuary legatees, unless an interest to limit and control the legal operation of the residuary bequest be somewhere discoverable. It is said that in this case such an intention is manifested, because the testator only disposes of, as *residuum*, all his personal estate, " if any shall be not hereinbefore or hereinafter specified :" that the £500 is thereinbefore specified, or *mentioned*, to wit, in the gift to the widow of its interest, and consequently, by the operation of these words is with-

[Nyce's Estate.]

drawn from the influence, and does not pass by virtue of the bequest of the residue. It is true, that this will is very awkwardly and inartificially expressed; but when we consider the whole of this clause, I think it will be perfectly plain that this argument assigns to the word " specified," as here used, a meaning much too limited. By this clause is given the remainder of my personal estate, if any shall be not hereinbefore nor hereinafter specified, to be equally divided, &c., *excepting what is herein reserved or bequeathed.* It is obvious, as well from the whole context of the will as from the peculiar phraseology of the clause in question, that the words, " specified," " reserved" and " bequeathed," occurring, as they do, in the same sentence, and having reference to the same subject-matter—for it will not do to say that the word " specified" refers to one portion of the personalty, and the words " reserved" and " bequeathed" to another—were used by the testator as synonymes, and as applicable only to the bequests he had before made in favour of his grandson Levi Nyce, and his wife, and the legacy he afterwards gives to his daughter Catherine Templin; for it is incredible, that after setting out with a declaration of his intention to dispose of the whole of his estate, real and personal, and showing by almost every line and letter of his will that he held that purpose steadily in view, he should altogether have omitted to make a final disposition of the large sum of £500. It is impossible he could have forgotten it, for it is mentioned in the sentence immediately preceding, and grammatically connected with the residuary bequest. As, then, the words of this clause are broad enough, without violating any natural meaning, to carry this portion of the estate, we must permit it so to pass, or assume the startling position, that although intending originally to devise his whole estate, the testator, without any apparent reason, momentarily abandoned his design, and immediately after resumed it. To induce us to adopt this notion, the language used in restraint of what has been shown to be the legal effect of a bequest of the residue, ought to be clear and unequivocal, and I find none such employed in the clause in question, or other parts of this will. On the contrary, to assign it such interpretation would be to defeat the manifest general intent, and that, too, when the word relied on by the counsel for the defendant does not imperiously or even necessarily require such meaning to be assigned it. The prayer, therefore, of the complainants' bill for a distribution among the surviving grandchildren must be granted.

The case was argued here by

*Lewis*, for the appellants, who cited *Gochenauer* v. *Froelich*, (8 *Watts* 19); 3 *P. Wms* 40; *Amb.* 577; 12 *Vez.* 497; 5 *Vez.* 149.

*Darlington*, contra, referred to 5 *Johns. Ch.* 286.

[Nyce's Estate.]

PER CURIAM.—The law of the case has been so fully and accurately stated by the president of the Orphans' Court, that it is unnecessary to do more than express the concurrence of this court in the opinions delivered by him.

Decree affirmed.