## WORRELL'S APPEAL.

Guardian held liable for an investment in stock of a navigation company, when in good credit, and paying large dividends for a long time subsequent; where it was common for other trustees to invest in such stock, and for others to use it as a permanent and safe investment, and where the guardian had invested his own funds in the same manner, and though the stock continued to pay large dividends and be in good credit for some years after the investment, and some of the wards who received the stock on attaining their majority, had realized a large profit on the investment of their share of the fund.

FROM the Orphans' Court of Philadelphia.

*Jan.* 19–22. The question in this case was whether the appellant was liable as guardian for certain investments made by him of his wards' money.

John Jennings died in 1832, leaving five children, of whose estate, Worrell, the appellant, at the solicitation of their mother, and against his inclination, became the guardian. From 1833 to 1835, the guardian received in cash about $6,000 on account of the share of John R., one of these children. This sum he invested, together with the funds of the other wards, as follows :—In 1834–5–6–8, in shares of the Schuylkill Navigation Company, at $111, $143, $160, $163, the par value being $50. Two other investments were made by him, one in stock of the Mechanics' Bank of Pittsburgh, and of the Delaware and Hudson Canal. But as to these no question was made in this court, the market prices being about the same as the cost. The auditor, on objection being made by the ward, disallowed the claims for credits for all these investments, and the guardian appealed.

From the auditor's report and the evidence, it appeared, that Worrell had undertaken the guardianship as a friend of the family, and without having made, or intended to make, any charge for his services. There was evidence that he made the investments with the knowledge and approbation of the wards' mother. It was proved that the two elder children had realized a large profit out of the same investments of their funds. That the ward, while in his minority, did not object. That a very large number of trustees had made similar investments of trust funds, and that the stock was considered and extensively used at the time the investment was made, as a good and safe mode of making permanent investments. That Worrell, the guardian, had been a holder of the same stock in his own right since 1834. It was also in evidence that the Navigation Company had paid dividends varying from 24 to 6 per cent. on the par value down to 1842 : since that time no dividends had been declared.

*McMurtrie* and *Randall*, for appellant.—It may be considered as conceded, since it is conclusively proved, that this investment was made *bonâ fide*, in the exercise of a discretion then considered sound, in the manner that other trustees and prudent men acted, and as he acted for himself. The English rule as to liabilities and duties of trustees in this particular, is no standard here ; compare 7 Ves. 150, 5 Ib. 839, with the settled doctrine of this state.

Their particular doctrine, established in Trafford v. Boehm, 3 Atk. 444, is that no fund which may be lost in the course of lawful business by the manager, is a proper investment: that was relied on and repudiated in 5 Barr, 15. It was there settled that the liability does not depend on the nature of the security, but whether the trustee acted in the manner that prudent men acted for themselves. Such was the rule in England until Trafford v. Boehm, 1 P. W. 648; 2 Ib. 85–6; Bluck v. Nicholls, Ib. 169; Trenchard v. Phillips, stated Ib. 168; 1 Atk. 480; 1 Atk. 513; 3 Swanst. 63, n. b.; C. T. Finch, 258; 1 Vern. 336; 1 Eden. 148; and is recognised by Story, J., in his Eq. Juris. §§ 465, 1269, 1271–3, where he says that "the present rule of the chancery imports, to say the least, extraordinary diligence and vigilance, and that it is certainly somewhat perilous to trustees, and startling to uninstructed minds." It is a doctrine introduced from state policy, and has never been adopted in Pennsylvania, but the rule as above stated has always prevailed: 1 Pa. 214; 6 W. 188; 8 W. & S. 150. He is not to be judged by the result: 8 W. 23; 4 J. C. R. 628; 3 Atk. 480. Such is also the rule in Massachusetts: 9 Pick. 446; where the selection of certain stocks was treated as an investment, and though there was a will, yet the words there do not give any other authority than the law: 20 Pick. 119.

*E. K. Price* and *Meredith*, contrà.—The question is not one of good faith, or whether the guardian acted in accordance with those most competent to judge; if it were, experience has proved he has not so acted. The English rule, it is admitted will not sanction this act. The earlier cases cited were investments in S. S. stock, under the express authority of an act of parliament. It is said to have been a state policy; but of this there is no evidence, and they do not exclude other securities. If honesty of intention and acting as for himself are always sufficient, we have no rule at all, and nothing is so hazardous but could thus be defended. It was set up in 1 Cox, 25, but rejected by Lord Loughborough, who said, an executor must always be liable for an infant's money. What are good investments need not be defined: it is sufficient that bank and canal stocks are not such. It must be a security, and not mere personal security—not a part ownership in a trading corporation. The Pennsylvania cases cited do not apply. 5 W. & S. 256, was nearly similar, and the trustee was held responsible where he had once received the money. 5 Barr, 15, was a loan to a corporation holding vast real estate, which was in substance a real security.

But there is no necessity for adding such stocks to the already ample list of securities specified in the act of Assembly; real securities, ground-rents, under 3 Raw. 131, and the loans secured, as those of the Lehigh Coal Company, under Twaddell's Appeal. If another rule is adopted, every case must be decided by the court on parol proof.

*April* 16. BURNSIDE, J.—The 14th section of the act "relating to the Orphans' Court," passed the 29th of March, 1832, Dunlop, 466, provides that "where an executor, administrator, guardian, or trustee, shall have in his hands any moneys, the principal or capital whereof is to remain for a time in his possession, or under his control, and the interest, profits, and income thereof, are to be paid away, or to accumulate; or when the income of real estate shall be more than sufficient for the purposes of the trust, such executor, administrator, guardian, or trustee, may present a petition to the Orphans' Court of the proper county, stating the circumstances of the case, and the amount or sum of money which he is desirous of investing; whereupon it shall be lawful for the court, upon due proof, to make an order directing the investment of such money in the stocks or public debt of the United States, or in the public debt of this commonwealth, or in the public debt of the city of Philadelphia, or in real securities, at such prices or on such rates of interest and terms of payment, respectively, as the court shall think fit; and in case the said moneys shall be invested conformably to such directions, the said executor, administrator, guardian, or trustee, shall be exempted from all liability for loss on the same, in like manner as if such investments had been made in pursuance of directions in the will or other instrument creating the same." It is true that this court has settled that the legislature did not intend to restrict the investments of guardians, executors, or trustees, to securities designated in the said recited act, and to require them, in all cases, without exception, to be made, under the direction of the court, but to point out a course free from risk—not to interdict every other investment: Twaddell's Appeal, 5 Barr, 17; Nyce's Appeal, 5 W. & S. 254. The stocks of the United States, as well as of this state, and the stocks of the city of Philadelphia, are generally in the market. Investments in landed securities are seldom difficult to obtain; but unfortunately, owing to the avariciousness of the age, five or six per cent. will not satisfy the cupidity and the rage for speculation which exists in those who have money to invest. The rage for speculating in stocks is universal throughout the

Union.   But a trustee who regards the interest and safety of himself and family, will follow the course laid down for him by the legislature.   It is urged upon us that Twaddell's Appeal (before cited) rules this case.   They have but little resemblance to each other.   Twaddell's Appeal was a loan of money to a rich corporation, owning valuable real estate; this is a purchase of stock of a navigation company.   A sudden calamity prevented the former, for a short time, from paying the semi-annual interest on their loans.

The Schuylkill Navigation Company must provide for their debts before the stockholders get anything.   I alluded to Twaddell's Appeal with some reluctance; beyond it, I cannot advance a step.   If that case had been an investment in stock of the company, and not a loan when the company were in full operation, it would have presented a different question.   Bank-stocks have been repudiated as unsafe investments for trustees to make.   Surely navigation-stocks are equally, if not more so.   We have many navigation companies in this state: shall we hold the stock of one a safe investment, and the stock of another unsafe?   There are stockholders of prudence and of the greatest wisdom in each of them—men deemed the wisest and most talented in the vicinity of the improvements.   But these navigation companies are all more or less subject to floods and other casualties.   A case may arise, where an executor, administrator, guardian, or trustee, will have cast upon him a sum invested in a navigation company or other improvement, which is unfinished; and it is the interest of the stockholders to complete the work.   To do so, a little more stock is to be taken.   In such a case, when it will arise, it will be worthy of consideration, and this court no doubt will come to a correct and just decision; but that is not this case.   I am unable to discover any good reason why navigation companies should be declared a safer investment than banks.   The proper rule for this court to adopt is, to place them all on the same footing as to trust investments.   It is for the safety of those who cannot take care of themselves.   The legislature have pointed out a way, if pursued, that a trustee may be safe, and run no risk.   If he disregards that salutary course, it may be his misfortune.

Referred to Mr. W., as the auditor of this court, to report on the expenses and commissions which ought to be deducted from the balance of the fund.