## Hodgson's Estate.    Black's Appeal.

*Mining—Coal lease—Royalty—Trustee—Decedents' estates.*

A coal lease provided that the lessees should mine at least ten million bushels of coal, during the continuance of the lease, and mine, remove and pay for one million bushels of coal for each and every year, until the ten million bushels were mined. It was further provided that should the lessees fail to mine the whole amount of one million bushels in any one year the deficiency must be made up in the following year, except in the last year of the term, when the portion remaining unmined was forfeited to the lessor. The lessor died before the expiration of the lease. Two years after the death of the lessor, and in the fifth year after the execution of the lease, the property was sold by order of court for payment of the lessor's debts. The administrator, under advice of counsel, failed to collect royalty on the whole of two million bushels the last two years, as that much was not mined. *Held*, that the administrator could not be surcharged for failing to collect the royalties on the coal which ought to have been mined by the lessee, but was not, and remained unmined at the date of the sale.

*Decedents' estates—Costs.*

Where an unsuccessful attempt is made by the distributees of an estate to surcharge an administrator with royalties which it was alleged should have been collected by him, the costs are properly payable out of the estate.

Argued Oct. 18, 1893. Appeal, No. 170, Oct. T., 1893, by Mary H. Black and C. H. Black, assignees of Mrs. Clementine Mort, an heir, from decree of O. C. Washington Co., dismissing exceptions to auditor's report in adjudication of estate of Wm. Hodgson, deceased. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to adjudication. Before McILVAINE, P. J.

John M. Grable filed his account as administrator of the estate of William Hodgson, deceased. The heirs and next of kin of the decedent, among them Mrs. Clementine Mort, appellants' assignor, filed exceptions to the account, claiming among other things that accountant should be surcharged for royalty on the difference between 2,000,000 bushels of coal, and 1,228,348 bushels, amounting to $4,228.59, this being, as alleged, the difference between the amount collected and which should have been collected under the coal lease.

The record did not show any assignment from Mrs. Mort to the Blacks.

The case was referred to J. M. Braden, Esq., as auditor, who reported on this claim as follows :

" First let us consider the question as to whether or not the accountant shall be surcharged with $4,228.59, the difference between $11,500 royalty, which the exceptants claim the accountant should have collected for the two years from September 1, 1885, to September 1, 1887, and $7,210.41, the amount actually collected and accounted for.

" The lease provides that ' the said parties of the second part (the Hilldale Coal Company) covenant and agree to and with the said party of the first part to mine and remove at least ten million bushels of coal during the continuance of this lease, and it is expressly agreed that the said parties of the second part shall and will mine, remove and pay for one million bushels of coal, of the above amount, for each and every year, from the date of this lease, that is, one million bushels on or before the first day of March, A. D. 1883, one million bushels on or before the first day of March, A. D. 1884, and so on, until the said ten million bushels are mined and removed in said ten years of this lease.   And it is further agreed that should said parties of the second part fail to mine and remove the whole amount of one million bushels, for each and every year as above stated, then the said number of bushels, or amount of coal, of the one million bushels not mined, must be mined and removed and paid for the next and following year in which they failed to mine and remove the said one million bushels, as above stated, except at the end of the tenth or last year of this lease, in which case, should there be any amount of the ten million bushels not mined and removed, then the same is to be forfeited to the said party of the first part, his heirs or assigns,' etc.

" It would seem to your auditor, from a consideration of the language of the contract, the circumstances surrounding its making, and the purpose for which it was made, that a reasonable construction of it would require the Hilldale Coal Company to mine, remove and pay for 1,000,000 bushels of coal for each year of the term fixed by the lease, and that if they fail to do this, then the portion of the 1,000,000 bushels remaining unmined must be mined, removed and paid for in the following

year, except the last year of the term, when the portion remaining unmined is forfeited to the lessors.

"But this is not the view taken by the accountant and his counsel. The accountant testifies as follows: 'The lease requires them to mine so much coal, but they have a certain length of time to take it out in, they could take it out the last year if they wished to.' And, again, he testified that in the collection of these royalties he tried to use his own judgment in the case, that he consulted his attorney and was advised by him that the Hilldale Coal Company need pay no more royalty than they did pay, and if he had thought otherwise, he would have tried to collect it.

"Assuming that the construction put upon the lease by the accountant and his counsel is a mistaken one, should the accountant be surcharged $4,228.59 on account of this error of judgment? Your auditor is of opinion that it would not be just so to do. The accountant does not stand in the place of the Hilldale Coal Company, nor is the matter of this attempted surcharge to be viewed in the light of an action against that company for a failure to mine the number of bushels of coal specified in the lease. The accountant is a trustee, and is responsible to his cestuis que trust, who in this case are heirs, for which reason this matter is to be decided upon a more liberal view of the trustee's discretion than as against creditors: Bruner's Appeal, 57 Pa. 46. It is not proven, or even claimed, that a dollar of this sum with which exceptants seek to surcharge the accountant ever came into his hands, nor is it proven or claimed that he has been guilty of bad faith in any matter pertaining to his duties as trustee.

"'It is said to be the harshest demand that can be made in equity, to compel a trustee to make up a deficiency where the money has not come into his hands. In such a case equity will not charge him, unless he has been guilty of negligence so gross as almost amounts to fraud:' Nyce's Estate, 5 W. & S. 254; Pim v. Downing, 11 S. & R. 66; Johnson's Ap., 12 S. & R. 317. 'All the authorities distinguish between such a case and that where a trustee has actually received the fund:' Nyce's Estate, supra. 'A trustee should not be surcharged for a loss arising from what at most may be a doubtful error of judgment, when not guilty of any willful neglect or default:'

Per Curiam, Supreme Court of Penna.; Bailey's Ap., 2 Cent. R. 310; Hanbest's Ap., 8 W. N. 208; McCourt's Ap., 11 W. N. 161; 12 Pa. 482; Scott's Intestate Law, 151.

"In this case it has not been shown that the accountant was guilty of any willful neglect or default. No such gross negligence 'as almost amounts to fraud' has been shown. On the contrary, the evidence shows that the accountant considered the matter of the amount of royalty this company should pay under the terms of the lease, that he consulted his counsel about it, and was advised that the company need pay no more royalty than they did pay, and that, had he believed the company liable under the lease for more royalty than the amount paid, he would have endeavored to have collected it. There is not the slightest intimation of collusion between the accountant and the coal company, and the auditor is irresistibly led to the conclusion that, if a mistake has been made by the accountant in the amount of royalties collected by him, such mistake was a mere error of judgment, free from any taint of bad faith, not attributable to gross negligence, and is such an error as the accountant cannot be held liable for.

"There are other difficulties in the way of surcharging the accountant with royalties, as desired by exceptants. The evidence does not disclose whether or not the coal company mined 1,000,000 bushels of coal between September 1, 1884, and September 1, 1885, hence the auditor is not informed as to the amount of coal to be mined, paid for and removed between September 1, 1885, and September 1, 1886; and although the evidence does show that the amount required by the lease to be mined was not mined, between the above mentioned dates, yet, according to the terms of the lease, the coal company had from September 1, 1886, to September 1, 1887, to make up the deficiency, and in August, 1887, the coal property belonging to the decedent's estate and covered by this lease was sold, for the payment of debts, with the rights and subject to the conditions of the lease thereon, and included in this sale was, of course, the coal which ought to have been mined between September 1, 1886, and September 1, 1887, the coal company having the right to make up the deficiency, in the year embraced in these dates, in the succeeding year. By this sale the heirs of the decedent would, it is to be presumed, receive the price

or value of the coal which ought to have been mined by the coal company, but was not, and remained unmined at the date of the sale, although the benefit derived may not have been so great as they would have received had the coal been mined, removed and paid for at the contract price.

"Under all the circumstances the auditor feels warranted in declining to surcharge the accountant with the said sum of $4,228.59, as desired by exceptants."

The auditor also charged the cost of the audit to the estate.

Exceptions to these findings and conclusions were dismissed by the court below in an opinion in part as follows, by McILVAINE, P. J.:

"When Mr. Grable took out letters of administration, the heirs gave him a written authority 'to ask, demand, distrain for, sue for, collect and receive all such rents and arrears of rents as now are or may hereafter grow due or owing to us from the Hilldale Coal Company,' etc.

"Under the contract or lease which had been executed by Edward Kelly, Jr., committee of the decedent, and the Hilldale Coal Company, the administrator collected from the company the sum of $9,227.35 royalties or rent. The exceptants claim that he did not collect this rent when it was first due, and also that he did not collect all the rent that was due and owing under the terms of the contract or lease, and that he ought to be surcharged with the rent he failed to collect, and also with the interest on the delayed payments of rent that he did collect. We are satisfied with the auditor's disposition of that part of the exceptant's claim which seeks to charge the accountant with the rental price of the coal that was not mined. The lease required that a certain amount of coal be mined and paid for each year, but it did not provide that so much coal should be paid for whether mined or not. If the amount specified was not mined, the remedy was a suit for damages in an action of covenant. And before any unreasonable delay in bringing such a suit had transpired—if indeed, it could have been brought before Sept. 1, 1887,—this court granted an order to the administrator to sell this coal tract, with all the rights of the Hodgson estate under the lease, including the coal in place which had not been mined, but which ought to have been mined under the terms of the contract, and a sale was so made,

and confirmed on the 23d day of August, 1887.  We are also satisfied that the accountant ought not to be charged with interest, which the exceptants claim was due and owing from the Hilldale Coal Company on account of their delay in paying the rent or royalties that were paid.  The auditor finds that this delay was, at least in part, caused by the action of the representative of one of the heirs, in notifying the company not to pay the administrator, and as the accountant never received the money, it would be inequitable to hold him liable when the loss of the use of this rent is, in some measure, attributable to the exceptants themselves."

*Errors assigned* were (1, 2) refusal of surcharge; (3) decree as to costs.

*H. M. Dougan* for appellants, cited: Hope's Ap., 33 Pitts. L. J. 270; Lazarus's Est., 145 Pa. 1; Charlton's Ap., 34 Pa. 473; Wiley's Ap., 8 W. & S. 246; Cline's Ap., 106 Pa. 620; Johnston's Est., 9 W. & S. 107; Burns v. Cox, 10 Phila. 8; Landis v. Scott, 32 Pa. 495; Minard v. Beans, 64 Pa. 413; Mining Co. v. Jones, 108 Pa. 69.

*Thomas H. Baird*, for appellee.

PER CURIAM, October 30, 1893:

The reasons given by the auditor and court below for refusing to surcharge the accountant with the royalties which he never received are amply sufficient to sustain the correctness of their conclusion.  The lessee was not absolutely bound to take out one million tons in each year, but could make up a deficiency in any one year during the following year, and if, at the end of ten years there was a deficiency, the coal not mined was forfeited to the owners of the fee.  In 1887 the land was sold by order of the orphans' court, with all the unmined coal upon it, and the proceeds were duly distributed to the parties entitled to them, including these appellants.  Of course the sale must be assumed to include the coal not mined under the lease for which the present attempt to surcharge the accountant is made.  This effort to obtain double payment for the same coal by surcharging an innocent trustee who never received any part of it, cannot possibly be sanctioned.

We are of opinion that the costs were properly payable out of the estate, as they were chiefly incurred in an unsuccessful attempt to heavily surcharge the accountant.

The decree of the court below is affirmed at the cost of appellant.