## Taylor's Estate.

*Trusts and trustees—Power conferred by will to invest in other than legal securities.*

Testator bequeathed all the rest, residue and remainder of his estate to his executor, the Fidelity Trust Company, "to have, hold, take, manage, convert, invest and dispose of the same as they may consider to be to the advantage of my estate as hereinafter provided," in trust to pay one-third of the principal of the personal estate to his wife absolutely, or, if she should prefer and signify her preference in writing, to hold the same in trust for her benefit, and to "manage, invest and reinvest the same and collect the rents, issues, income and profits thereof," and after deducting expenses, charges, taxes, etc., to pay the net income to her for life. The remaining two-thirds he gave his executor, in trust "to convert, manage, invest and reinvest the same and collect the rents, issues, income and profits thereof," and after deducting charges, taxes, etc., to pay the net income to his daughter, for her sole and separate use during her natural life, with remainder to her children: *Held,* that the power to invest in other than legal securities was not confined to the accountant's administration as executor, but extended to its administration as trustee.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1900, No. 352.

William Y. Taylor, the testator, died Oct. 7, 1899, leaving a will dated March 7, 1895, and duly admitted to probate, the third item of which was in part as follows:

"Item Third. I give, devise and bequeath to my Executor hereinafter named all the rest, residue and remainder of my estate, real, personal and mixed, to have, hold, take, manage, convert, invest and dispose of the same as they may consider to be to the advantage of my estate, as hereinafter provided, In Trust nevertheless to pay over unto my said wife the one full equal third part of all my personal estate absolutely, if she shall so desire it to be paid, and also the net income of one undivided third part of all my real estate for and during the full end and term of her natural life, or if she should prefer it, and signify her preference in writing under her signature to my Executor, then In Trust nevertheless as to one full equal third part of said residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, to manage, invest and reinvest the same and collect the rents, issues, income and profits thereof, and after deducting the expenses, charges, taxes, &c., to pay the net income thereof in monthly portions from time to time when and as the same shall be received to my said wife for her own separate use, for and during the term of her natural life. And the remaining two-third parts of all my said personal estate, together with all the rest, residue and remainder of my estate, real, personal and mixed, unto my said Executor In Trust to convert, manage, invest and reinvest the same and collect the rents, issues, income and profits thereof, and after deducting the expenses, charges, taxes, &c., to pay the net income thereof when and as the same shall be received from time to time unto my said daughter Ella Augustine Middleton in monthly portions for her sole and separate use for and during her natural life, so that the same shall be free from the control and not be liable to or for the debts, contracts or engagements of any husband she may have or take. And I further declare it to be my will that the income hereby given and bequeathed to my said wife and daughter respectively shall not be liable for their respective debts, contracts or engagements nor be in any way at their disposal or at the disposal of either of them by way of anticipation or otherwise until the same shall actually be received by them respectively from said Executor according to the terms of this my Will. And the receipt of my said wife in her own name and under her own hand, and of my said daughter in her own name and under her own hand, notwithstanding coverture, shall be deemed and

taken as good and sufficient acquittances in the law to the Executor afore-said for all payments made by them under the Trusts hereby created and declared."

The rest of this item was not regarded as relevant by the auditing judge or the court *in banc*. On the death of Mrs. Middleton, which had not occurred at the date of the audit, the capital of the fund of which she had enjoyed the net income in her lifetime was bequeathed to her children, to be paid to them as they arrived at the age of twenty-one. By a codicil executed Nov. 19, 1896, testator directed as follows:

"Item. I do hereby further order and direct that Item Third of my said Will shall be so modified as that instead of my said Executor paying over to my said wife the net income of one undivided third part of all my real estate for and during the full end and term of her natural life, the said Executor shall pay to my said wife in cash semi-annually such sum of money out of the residue and remainder of my estate which is hereby given to my said Executor in Trust for my said daughter and any child or children she may leave to sur-vive her, as shall be fully equal in amount to the net income of said one undivided third part of my real estate, so that she, my said wife, Jane M. Taylor, shall have and receive to her own use, as set forth in the said Third Item of my said Will, what would be equivalent in money to all that she would receive and take under the Intestate Laws of this State, in case she should elect to take against my said Will. And in all other respects than is herein provided, my said Will shall be and the same is hereby confirmed."

The trustee invested in other than legal securities in accordance with its understanding of the powers conferred in the above item, and losses were sustained. The account was filed at the request of the life-tenant and her son, the remainderman, to give them the opportunity of objecting to certain losses which had arisen on certain investments which they contended had been improperly made. The auditing judge, Henderson, J., held that the power to invest in other than legal securities was confined to the administration by the accountant as executor and did not extend to the administration as trustee, and surcharged it with losses aggregating about $10,000. To this ruling the accountant excepted.

*Clement B. Wood*, for exceptant; *Graham & Gilfillan*, contra.

THOMPSON, J., Jan. 16, 1923.—The questions raised by the exceptions are the right of the trustee to invest in non-legal securities and the loss sustained by the subsequent sale or maturity of some of them.

A careful study of the third item of testator's will, as modified by the codicil, shows that he gave the residue of his estate to his executor, the accountant, "to have, hold, take, manage, convert, invest and dispose of the same as they may consider to be to the advantage of my estate, as hereinafter provided, in trust, nevertheless," to pay to his wife one-third of his personal estate, with the option to have same held in trust if she so desired—which option she did not exercise—and the remaining two-thirds of his personal estate and all his real estate "to convert, manage, invest and reinvest the same and collect" the income, and pay the net income to his daughter during life under a spendthrift trust, subject, however, as directed by the codicil, to pay to his wife in cash semi-annually such sum of money out of the residue and remainder of his estate as shall be fully equal in amount to the net income of one undivided third part of his real estate, so that she shall have and receive to her own use what would be equivalent in money to all that she would receive and take "under the intestate laws of this State, in case she

2 D. & C.

should elect to take against my said will," with limitation over of principal at his daughter's death to her children and issue of deceased children living at her death, and in default of such to charities.

The auditing judge was of opinion that the discretionary power as to investments given to the executor in the opening clause of this item related solely to his duties as executor.

By the adjudication upon the executor's account, fourteen months after testator's death, certain non-legal investments found in his estate were awarded to the accountant as trustee at an appraised value. The trustee afterwards sold some of these investments at a price less than the appraisement, and retained others until maturity, thus depriving the estate of the premium on said investments which could have been realized had they been promptly sold; and the auditing judge surcharged the accountant with the losses thus sustained. The accountant, as trustee, also invested in non-legal securities at par or less, the market values of which have declined, and in one security at a premium which, upon maturity, entailed a loss of $75. The auditing judge surcharged the accountant with this loss and directed that the securities still on hand be stricken from the account and cash substituted therefor. The accountant filed exceptions to the findings.

We think, however, that this construction of the power and discretion of the accountant too narrow.

It is not usual to give an executor, *qua* executor, the power or to impose upon him the duty of management and investment. The duty of an executor is to settle the estate and get it ready for distribution, and with that distribution, decreed by the court, his powers are exhausted and his duty ends. Why so solicitous in enjoining duties and so lavish as to discretion in performing them when both were to expire with the year? If testator really meant that the estate should be handed to the trustee in cash or legal investments, he could have expressed that intention in fewer words, or even more emphatically by not saying anything.

The testator certainly did intend to give the accountant, whether as executor or trustee, or both, a discretion not conferred by law; and "my estate," whose advantage is thus committed to it, certainly comprehends realization of income also.

The primary object of testator's bounty was his daughter. His only concern as to his wife was to relieve her from the collection of the net income from an undivided third of his real estate given her by the will, and directing the trustee to pay her a sum equal to it, after deduction of commissions, etc. And his anxiety to secure his daughter's comfort during life beyond peradventure is shown by the creation of a spendthrift trust for her.

It is a matter of common practice not to convert gilt-edged investments of a testator, producing a steady and handsome income, where the production of income is the first and chief end of testator's provision.

Under these circumstances, to hold that the testator intended the discretion so broadly given to deal with the estate "as they (the accountant) may consider to be to the advantage of my estate" should apply only to its powers as executor and not also as trustee, because omitted in defining the destination of the balance of his residuary estate, would seem to be highly technical, and imputing to the testator the setting of a trap to catch the trustee, who might in good faith construe the will as conferring upon it the same discretion admittedly given it as executor. It was said in Hodgson's Estate, 158 Pa. 151 (153): "The accountant is a trustee, and is responsible to his *cestuis que trust*, who in this case are heirs, for which reason this matter is to be decided

upon a more liberal view of the trustee's discretion than as against creditors: Bruner's Appeal, 57 Pa. 46."

The trustee, even if charged strictly with the administration of his trust under the law, might well suppose that, as the testator himself considered the certainty of the fixed income enjoyed by himself preferable to the risk of a new investment of enhanced principal which might enure solely to the benefit of the remainderman, this fact would justify him in the retention of the original investments.

We are not advised as to what testator's investments cost him, but they produced income ranging from 4 per cent. to 6 per cent., and were all above par at the time of his death, ranging from a 4 per cent. investment maturing in 1917, appraised at 105; another maturing 1948, at 108; a 5 per cent. investment maturing 1912, at 102½; another maturing in 1920, at 111½, and so on, culminating in a 6 per cent. investment maturing in 1910, at 125.

The first and main object of the creation of the trust was to provide an income for his daughter, and the income received for the daughter was exactly that which the testator himself enjoyed, although by the trustee's conduct of the estate the remainderman is deprived of the enhanced value which would have accrued to the estate had the trustee sold the investments at their appraised value. It may well be that the trustee, in the then state of the securities market, found that even if it sold the investments and realized an enhanced principal for the remainderman—subject always to a new risk—the daughter would receive a smaller income than by holding them and having the same income the testator himself enjoyed, with a sure recovery of the par value at maturity. The argument of counsel for the remainderman that a trustee should sell even a non-legal investment of a testator, simply because a premium may be realized would apply to a perfectly legal investment of the testator which during the continuance of the trust might be sold at an advance. But speculation in the securities of an estate is not looked upon with favor; and unsuccessful speculation, even though for the laudable purpose of benefiting the estate, always receives, in a surcharge, the punishment it deserves.

There is nothing in the holding of a non-legal investment of a testator until maturity which in itself shows supine negligence on the part of a trustee, and, in the present case, the trustee, even if charged strictly with the administration of its trust under the law, might well suppose that, as the testator himself considered the certainty of the fixed income enjoyed by himself preferable to the risk of a new investment of enhanced principal which might enure solely to the benefit of the remainderman, the like management of the estate by it to secure the greater comfort of the daughter was within the contemplation of the testator.

However, as we read the will and codicil, the testator clearly committed his estate to the accountant as executor and trustee, to have, hold, take, manage, convert, invest and dispose of the same and to reinvest as it might consider to be to the advantage of his estate; and, therefore,

The exceptions are sustained and the adjudication is modified accordingly, and, as thus modified, is confirmed absolutely.

LAMORELLE, P. J., and GEST, J., did not sit.

HENDERSON, J., dissenting.—Article III, § 22, of the Constitution of Pennsylvania, provides that trust funds shall not be invested in "bonds or stocks of private corporations." This accountant has made investments forbidden by this clause. The sole question for decision is, Does the will "enable us to

2 D. & C.

say with certainty that the testatrix intended her executor not to be restrained in this respect?" Penrose, J., in Barker's Estate, 159 Pa. 518 (528).

The clause of the will erecting the trust of the two-thirds share for the daughter contains no exemption from legal investments; it provides: "And the remaining two-thirds parts . . . in trust to convert, manage, invest and reinvest the same and collect the rents . . . and . . . to pay the net . . . income . . . unto my said daughter. . . ."

But it is contended there is an earlier clause in the will giving the executor the whole residuary estate in trust to divide the same into two parts, and that the language of this clause is broad enough to permit non-legal investments. This is true, but I know of no authority whereunder this trustee may read into the trust clause in question an authority which the testator has conferred in connection with another trust. Can we say such reasoning has established with the "utmost clearness" the exemption from the constitutional mandate? "The rule has been established for the protection of trust estates, and the hardship of any individual case is as nothing compared with the disastrous results that would flow from its relaxation. The rule is founded upon the highest considerations of public policy. See Perry on Trusts, §§ 452 and 460; Mant *v.* Leith, 15 Beav. 524; Worrell's Appeal, 9 Pa. 508; Ihmsen's Appeal, 43 Pa. 431;" Barker's Estate, 159 Pa. 518 (528).

I would dismiss the exceptions.