# Directors of Schuylkill *versus* Overseers of Montour.

*Order for Removal of Pauper, conclusiveness of.—Assumpsit to recover Expense of supporting Pauper not sustained.*

1. An order of two justices for the removal of a pauper, unappealed from, is conclusive against all parties named in it.

2. Hence, in a civil action brought by overseers of a township for maintenance and expenses of a pauper, against the poor directors of a county to which he had been removed by an order of removal, unappealed from; the question whether the Common Pleas had jurisdiction to try a settlement case does not arise.

3. The poor laws do not provide for costs or charges of a pauper removed by order of two justices to his last and legal settlement, where he is accepted and no appeal taken.

4. Where the poor directors accepted the pauper and requested the overseers to "send bill of expenses," no such implied promise arose from the acceptance or the request, as would support an action of *assumpsit* by the overseers to recover the expenses of maintenance: and it was error to sustain it.

ERROR to the Common Pleas of *Schuylkill county.*

This was an action of *assumpsit*, by The Overseers of the Poor of Montour township, in the county of Columbia, against The Directors of the Poor and House of Employment of the county of Schuylkill, to recover the money expended by plaintiffs in the "care, attention, food, clothing, medicine, and medical attendance, costs, charges, and surgery found for and bestowed on John Kashner and his family, paupers, and for the expenses of

removing them to the almshouse in Schuylkill county," where his legal settlement was, &c., &c.

To this the defendants pleaded *non assumpsit*, and tender of $250.

The case was this :—John Kashner, his wife and five children, became a charge upon the overseers of Montour township, in Columbia county, on the 1st of November 1856. He had lived with his family in Schuylkill county about two years and six months prior to June 6th 1855, about which time he removed into Cattawissa township, in Columbia county. He worked in a stone quarry in Montour township, about three miles from his home, in Catawissa township, and on November 1st following, was so much injured while blasting stone, that it became necessary to amputate both legs. He remained a charge upon Montour township with his family from November 1st 1856 until January 12th, following; but on the 13th of December 1856 the overseers applied to two justices of the peace and procured an order of removal, in pursuance of which he and his family were taken to Schuylkill county. The overseers of Schuylkill did not appeal from the order of removal, but on receiving the bill of expenses for maintenance, and considering it exorbitant, refused to pay it. The plaintiffs then brought this action of *assumpsit*.

The defendants requested the court to charge the jury,

1. That this court has no jurisdiction of the subject-matter of this suit.

2. That the plaintiffs cannot adjudicate in this form of action the legal settlement of Kashner, and the expenses incident to his support and maintenance up to the time of obtaining an order of removal.

3. That plaintiffs are not entitled to recover anything in this form of action.

The court directed a verdict for the plaintiffs for such sum as the jury thought was fairly due from defendants, subject to the opinion of the court on the question of law raised by defendants' points, and subsequently entered judgment on the verdict.

The errors assigned for defendants were,

1. In permitting the plaintiffs below to prove in this form of action the legal settlement of John Kashner.

2. In entering judgment on the verdict, whereby they answered all points of the defendants below in the negative.

*George H. Clay*, for plaintiffs in error.

*Campbell* and *Smith*, for defendants.

The opinion of the court was delivered, May 6th 1863, by
WOODWARD, J.—The order of removal unappealed from was

[Directors of Schuylkill *v.* Overseers of Montour.]

conclusive against all parties named in it: 3 Burn's Just. 594–7; 3 Cascy 277; 10 Id. 232.    Why, then, should it be so earnestly argued that the Common Pleas has not jurisdiction to try a settlement case?   No such question was open on this record.   The last legal settlement of the pauper had been conclusively fixed by the unappealed order of removal, and was not an open question for the Common Pleas or any court to try.   This action was founded on that ascertained and established fact—it was not brought to establish it.

So far from appealing from the order of removal, the directors accepted the pauper under it, and sent to the overseers of Montour a written request for their charges:—" Send bill of expenses, and oblige us."   This action is founded on the promise supposed to be implied from such circumstances, and the question is, will the law imply the promise?

The learned counsel who argued against the action, insists upon the 22d section of the Act of 1836, as a statutory rule for costs and charges, which displaces the common law action.   The 22d section relates to costs and charges ordered to be paid *on appeals*.   But here there was no appeal, and therefore that section has no application.   Whether the case could have been brought under the 23d section, like that of Sugarloaf township herewith decided, need not now be considered.

The question is, will a common law action of *assumpsit* lie? Our poor laws do not provide for costs or charges of a pauper removed by order of two justices to his last and legal settlement, where he is accepted, and no appeal taken.   They contemplate a speedy removal as soon as he becomes chargeable, and if no appeal is taken from the order, no provision is made for costs or charges.   Indeed, overseers are not permitted to incur charges on his behalf until authorized by an order of support, and an order of removal relieves them from that.

What ground is there, then, for implying a promise to pay expenses which the plaintiffs below were not authorized to incur? Had the order of removal fixed an amount to be paid, we might perhaps infer, from the acceptance of the pauper under such an order, a promise to pay the amount fixed, but the order in this instance was silent on the subject.   The mere acceptance of the pauper, therefore, would scarcely ground a legal implication. Then as to the request for the bill, it was accompanied by no promise to pay, and even if it had been, it would be hard to find a consideration for the promise.

The acceptance of the pauper was a legal duty.   The law imposed no duty to pay the plaintiffs' bill, and there being no express promise to pay it, we see nothing for the action to rest on, and think it ought not to have been sustained.

                                        The judgment is reversed.