## Massey's Appeal.  Loxley's Estate.

1. In Pennsylvania the rules of the common law regarding the devolution of property described in lapsed devises and bequests are in full force. Under these rules real estate, the devise of which has lapsed, descends to the heirs-at-law, and forms no part of a residuary estate created by a testator's will, except where a special intent to the contrary is manifest. On the other hand, personal property, where a legacy has lapsed, falls into the residuary estate.

2. The Act of April 8th 1833 has not changed these common-law rules in regard to lapsed devises and bequests,

3. Patterson *v.* Swallow, 8 Wright 490, and Yard *v.* Murray, 5 Norris 113, explained.

January 28th 1879.  Before Sharswood, C. J., Mercur, Gordon, Paxson, Woodward, Trunkey and Sterrett, JJ.

Appeal from the Orphans' Court of *Philadelphia county :* Of January Term 1879, No. 86.

Appeal of Anna E. Massey and others, residuary legatees under the will of Mary P. Loxley, deceased.

This was a petition by the personal representatives of two of the next of kin of the testatrix, for a review of the auditor's report and the decree confirming the same, whereby the amount of a lapsed legacy was awarded to the residuary legatees ; and praying that the said legacy might be awarded to her next of kin.

The petition avers, that Mary P. Loxley, by the last codicil to her will, dated August 6th 1866, bequeathed, inter alia, as follows ; " I do hereby give, devise and bequeath unto said John Yard, Jr., and Charles Yard, all the city of Philadelphia loans of every description now standing in my name, amounting in all to the sum of $116,300, or the equivalent of the same in money, should I dispose

[Massey's Appeal.]

of the same or any part thereof during my lifetime; this bequest to be free and clear of all collateral inheritance tax.".

That by her will, dated February 6th 1860, she directed her executors to sell and convert into money all the rest, residue and remainder of her estate, real, personal and mixed, of which she might die seised, possessed or entitled to, and to divide the net proceeds thereof among persons therein named.

That John Yard, Jr., died before the testatrix ; that the auditor awarded the moiety of city loan, bequeathed to him, to the residuary legatees of the testatrix, and that his report was confirmed by the Orphans' Court.

That Charles Yard appealed to the Supreme Court, which dismissed his appeal, saying : " It is proper before closing to say that we give no opinion on the question whether the lapsed legacy to John Yard, Jr., fell into the residue. The parties representing that question are not before us."

That in the case of Yard, executor of Mary P. Loxley, v. Murray, decided by the Supreme Court on the same day, that court held that the residuary clause of a will must evince a special intent to pass over lapsed portions of the estate into the residue.

That the petitioners are the personal representatives of two of the next of kin of the testatrix, and that they were advised that there was error apparent in the record, in awarding the lapsed bequest to the residuary legatees. The petition prayed that the proceedings might be reviewed and that the said lapsed legacy might be awarded to the next of kin of the testatrix.

The answers of the residuary legatees set up that there was no apparent intention of the testatrix to die intestate as to any part of her estate, because she had made disposition of the whole thereof, and that the lapsed legacy passed by law to them as her residuary legatees.

In an opinion, the court, Penrose, J., said :

" It is doubtless true that the prevalent opinion among the legal profession in this city was, that a legacy lapsing by reason of the legatee's death in the lifetime of the testator, in the cases not otherwise provided for by statute, passed to the residuary legatees. This was stated by Sir William Grant, in Cambridge v. Rouse, as having ' been longed settled.' As to a lapsed devise, the rule was supposed to be different, the reason given being, that a will as to realty spoke only from the time of making it, and the residuary devisee could only take what at that time was intended for him : Jones v. Mitchell, 1 Sim. & Stu. 294.

" This reason for the distinction was taken away when the Act of 1833, providing that the real estate of a testator acquired after making his will shall pass by a general devise, in the absence of words indicating a contrary intention, was enacted.

" There was another reason sometimes given, namely : that the

'heir could not be disinherited without an express devise or necessary implication;' but as the right of succession to personal property of an intestate was conferred by the same Act of Assembly, and in terms quite. as absolute as the right of inheritance to real estate, this reason cannot be regarded as a very satisfactory one, and accordingly in Patterson *v.* Swallow, 8 Wright 490, Judge Woodward declares that the old distinction between lapsed legacies and lapsed devises no longer exists in Pennsylvania.

" That a devise to John Yard, Jr., which lapsed by reason of his death, in the lifetime of the present testator, did not, under the language of the residuary clause, pass to the residuary devisees, was the very point decided by the Supreme Court in the recent case of Yard *v.* Murphy, 5 Norris 113. Why should there, in view of what was declared in Patterson *v.* Swallow, *supra,* be a different rule with regard to the lapsed legacy? In both cases the right of the parties claiming the residue rests upon the same clause in the will. If insufficient for one, why should it avail the other? That it does not is clearly within the reasoning of Chief Justice Agnew, in delivering the opinion of the court in Yard *v.* Murphy. It is evident that the language of the court was not used inadvertently or in forgetfulness of the distinction that had been supposed to exist, because when the opinion was prepared, the appeal in the case now before us, which involved a question affecting the right to the lapsed legacy, was also under consideration, having been argued during the same week, and the opinion having been delivered on the same day. The very point, therefore, could not fail to present itself to the mind of the court, although the question argued before it had been, not the distinction of the lapsed legacy, but whether there had been a lapse at all. The auditor, however, had discussed the question of distinction, and after an elaborate consideration of the authorities had made distribution among the residuary legatees. No one had excepted to his action in this respect, and this court had decreed distribution accordingly. The auditor's reasoning, and the authorities were therefore before the Supreme Court. That they have failed to convince and that there was a very decided opinion that the distribution, if made in conformity with the decree as it there stood, would not be a proper one, appears from the very significant manner in which attention is called to the point in the opinion affirming the decree. 'It is proper before closing to say, that we give no opinion whether the lapsed legacy to John Yard, Jr., fell into the residue, the parties representing that question are not before us.' This is what was said in Yard's Appeal, 5 Norris 129. With the vast accumulation of business in the Supreme Court, it is impossible to suppose that this invitation to further litigation in an estate, which otherwise would have been closed at once, would have been given, had it not been the deliberate opinion of the court that injustice would otherwise be done. The case will not rest upon our

decision of it; we prefer, therefore, to follow what we are convinced was the view of the court of last resort; if we are mistaken, our error will be there corrected. We now decide that the legacy, which lapsed by reason of John Yard's death, did not pass to the residuary legatees, but that the parties entitled are the next of kin of the testatrix, Mary P. Loxley.

"So much of the report of the auditor and of the decree thereon as awards any portion of the legacy, which lapsed by reason of the death of John Yard, Jr., to the residuary legatees, must, therefore, be revised and set aside, and the report recommitted to the auditor for correction."

From this decree this appeal was taken.

*Louis C. Massey, John A. Clark, Joseph B. Townsend* and *George W. Biddle*, for appellants.—Lapsed legacies pass to the residuary legatee: Cambridge *v.* Rous, 8 Vesey, Jr., 25; Leake *v.* Robinson, 2 Meriv. 392; Nyce's Estate, 5 W. & S. 260; Woolmer's Estate, 3 Whart. 477. To make them intestate property there must be an apparent intent to exclude them from the residue: King *v.* Woodhull, 3 Edw. Ch. 79. Patterson *v.* Swallow was intended to do away with lapsed legacies of either realty or personalty. Yard *v.* Murray, 5 Norris 113, was the case of a lapsed devise of realty which at common law descends to the heirs.

*E. L. Perkins, John G. Johnson, Uselma C. Smith* and *E. Spencer Miller*, for appellees.—To pass lapsed specific bequests to residuary legatees there must be a clearly expressed intention to do so, and none appears in this will. Woolmer's Estate, *supra*, was the case of a void not a lapsed legacy. We rely upon Yard *v.* Murray, *supra*.

Mr. Justice Woodward delivered the opinion of the court, March 24th 1879.

In Pennsylvania, throughout its history as a province and a state, the rules of the common law regarding the devolution of property described in lapsed devises and bequests have been accepted as in full force. They have been constantly applied and acted on by the courts and by members of the bar. While there have been indications of a belief in the minds of individual judges in some recent cases that the Act of the 8th of April 1833 has modified them, they have never been departed from in any precedent of controlling authority. Under these rules, real estate, the devise of which had lapsed, has been always held to descend to heirs-at-law, and to form no part of a residuary estate created by a testator's will, except where a special intent to the contrary has been apparent. This principle was taken for granted in Allison *v.* Kurtz, 2 Watts 185. It is true that the lapse in that case was of part of the residue, but

[Massey's Appeal.]

Judge SERGEANT, in the opinion, did not advert to that distinction. On the other hand, personal property, where a legacy has lapsed, has with equal uniformity been given to residuary legatees: Woolmer's Estate, 3 Whart. 477; Nyce's Estate, 5 W. & S. 254. In Woolmer's Estate, Judge KENNEDY quoted the remark of Sir William Grant, in Leake v. Robinson, 2 Meriv. 392, that "it must be a very special case, indeed, in which there can be at once a residuary clause and a partial intestacy."

Neither the integrity nor the authority of these rules has been impaired by the exceptional cases that from time to time have been decided. In Patterson v. Swallow, 8 Wright 490, where residuary devisees were held entitled to take land, the names of the persons designed to be made particular devisees had been omitted in the draft of the will of the testatrix. Blanks left for the insertion of the names had not been filled. It was purely a void, and not a lapsed devise. And in Neff's Appeal, 2 P. F. Smith 326, where both personal property and land were decided to belong to the next of kin, the lapsed devise and legacy had been of parts of the residuary estate, and thus came within the exception stated in Leake v. Robinson, of "some part of the residue itself ill-given."

From some expressions in the opinion in Patterson v. Swallow, it is manifest that the judge who delivered it believed that the Act of 1833 had destroyed the distinction between real and personal property, and that land embraced in a lapsed devise should go to residuary devisees. And from some expressions in the opinion in Yard v. Murray, 5 Norris 113, it might be inferred that it was the design of the court to declare not only that the distinction was obliterated, but that the result of the obliteration had been to cast the real and personal estate alike upon the heirs-at-law. But in each of those cases, the language employed in entering the judgment was aside from any point involved or ruled.

In the consideration of Yard v. Murray, after the argument—and it was carefully and deliberately considered—there was hesitation on the part of some members of the court to affirm the judgment of the Common Pleas. In the first place, it was thought that the language of the residuary clause in Miss Loxley's will was exceptionally comprehensive. The gift was of "all the rest, residue and remainder" of her "estate, real, personal and mixed," of which she should "die seised, possessed or entitled to." The opinion of the court upon the effect of the Statute of Wills had been expressed emphatically and without qualification in Patterson v. Swallow, and there was an inclination to accept and adopt that opinion, especially as no case of binding force recognising the contrary doctrine had been decided subsequently to the enactment of the statute. And it was urged that in this state, where under almost all circumstances the same principles govern the distribution of real and personal estates, symmetry would be given to the legal system by establishing the rule

[Massey's Appeal.]

that land, like personal property, should go, in the event of lapse, into the residuary estate.

There were, however, considerations, which were in the end controlling, to be taken into account on the other side. The principles of the common law had been rules of property for generations before 1833, and during a period of almost fifty years after the Statute of Wills was passed, estates had been settled, titles had been acquired and conveyed, and counsel had advised and instructed clients on the theory that they remained rules of property still. The very paucity of precedents was enough to prove the settled and pervading professional opinion that the old rules had been left unchanged. An Act of Assembly would have only prospective operation, and would do no wrong. A departure from the accepted theory of the law by a judicial decision would be fruitful of wide-spread mischief. Besides, in order to reach such a decision, the statutory words would have to be strained. The tenth section of the Act of 1833 declared simply that real estate acquired by a testator after making his will should pass by a general devise. Equivalent words had been so construed in Massachusetts and Maine, as to work out the result contended for in Patterson v. Swallow, while precisely the contrary view of the effect of such words had been taken by the courts of New York. The English Statute of Wills had left nothing for construction. By the third and twenty-fourth sections, the substance of the tenth section of our Act of 1833 was enacted, and the twenty-sixth section declared in terms that a residuary clause should include land described in lapsed and void devises. Upon like grounds an affirmance of the judgment was finally agreed to without dissent.

No issue is involved in this appeal except that relating to the personal estate of the testatrix. The opinion of the Orphans' Court stated the law with entire accuracy, and their decree might safely be reversed for the reasons contained in that opinion. But it has been thought right that the unanimous judgment of the members of this court on this branch of the law of the Commonwealth should be pronounced. It may be that it would be wise to introduce the principle of the twenty-sixth section of the English statute into our system. But in deciding Yard v. Murray, it was felt that it could only be introduced with safety by the action of the legislature.

The decree of the Orphans' Court is reversed, and it is now adjudged and decreed that the decree of that court, made on the 4th of November 1876, be reinstated and restored, with all the force and effect the same would have if no part of it had been at any time annulled, subject, however, to the exception that the costs of this appeal be paid out of the fund for distribution.