Rizer, *et al. vs.* Perry, *et al.*   Howard, *et al. vs.* Perry, *et al.*

(Decided 3rd March, 1882.)

---

ISABELLA RIZER and LUCY ANNAN *vs.* GEORGE C. PERRY, and others. JOHN W. HOWARD, and others, trustees of Mary Hoye School House *vs.* GEORGE C. PERRY, and others.

*Construction of a Will—Void Charitable bequests—Conversion of Realty into Personalty—Effect of direction to sell Real estate to pay void bequests—Sale, made under a Void power, Ratified under proceedings for a Sale for a different purpose, the same appearing to have been fairly made—Construction of Act of* 1849, *ch.* 229, *(Code, Art.* 93, *sec.* 309,) *affecting the rul egiving the Heirs-at-law, and not the Residuary devisees, the subject of a void devise of Real Estate.*

A testatrix, by her will directed certain real estate to be sold by her executors, and the funds or proceeds of said sale to be divided into two equal parts, which she devised and bequeathed " to the trustees of the Mary Hoye School House in Cumberland, Maryland, for educational purposes, and to the African Missionary Society for the purpose of converting and christianizing the African race, share and share alike." Neither the trustees of the Mary Hoye

School House, nor the African Missionary Society were incorporated bodies. HELD:

1st. That in no sense could either of said bequests be supported.

2nd. That there had been no such conversion of the realty into personalty as to entitle the residuary legatees to receive it in the character of personalty, and as part of the personal estate of the deceased embraced by the residuary clause of her will.

3rd. That the property in its quality of realty did not pass under the residuary clause of the will to the residuary devisees by force of sec. 309 of Art. 93, of the Code.

4th. That although the real estate, the subject of the charitable bequests, had been sold by the executors, yet as those bequests had failed, and they were the only purposes for which the sale was directed to be made, the heirs-at-law took the real estate by descent in the condition in which it was left by the testatrix, and consequently, the sale was made without legal object or power.

5th. That inasmuch however as one of the objects of the present bill was to have the property sold for distribution among the heirs of the deceased, and there was nothing to impeach in any way the fairness of the sale that had been made by the executors, the Court would ratify that sale and direct the proceeds, together with all the rents received, to be brought in for distribution among the heirs.

6th. That the fact that the sale was unadvisedly and erroneously made would in no way affect the right of the heirs to receive the proceeds. The executors would be treated as trustees holding the money for the use of the heir-at-law.

Article 93, sec. 309, of the Code, taken from the Act of 1849, ch. 229, provides that " every last will and testament executed in due form of law after the first day of June, eighteen hundred and fifty, shall pass all the real estate which the testator had at the time of his death." HELD :

That as it did not appear in the will that the testatrix desired the residuary devisees to take the property in question, and a different intention being naturally inferrible from the effort to give the property to other persons and devote it to a charitable object, the Court did not feel warranted by force of the above statute alone to say that the void devises passed to the residuary devisees.

APPEALS from the Circuit Court for Allegany County, in Equity.

The case is stated in the following opinion, rendered by the Court below, (ALVEY, J.)  "This is an application on the part of the heirs-at-law of Mrs. Mary Hoye, who died in the year 1875, to have her will construed, and certain bequests therein declared void, and that the subject of the bequests be declared to belong to the heirs-at-law.

"By the will of the deceased, admitted to probate in October, 1875, but bearing date the 6th of August, 1873, among other bequests and devises, she desired and directed that her lot, in the City of Cumberland, should be divided, and that the one part thereof should be sold by her executors, and the proceeds divided specifically among certain parties named, and the other part of the lot, with the dwelling thereon, she devised to her niece, Mary Perry, for life, and the reversion · therein, she attempted to dispose of, as follows:

"'Item. After the death of my niece, Mary Perry, I hereby authorize and direct my executors to dispose of the dwelling-house, and the balance of the lot on which it stands, and the funds or proceeds of said sale to be divided into two equal parts, which I devise and bequeath to the trustees of the Mary Hoye School House, in Cumberland, Maryland, for *educational purposes*, and to the African Missionary Society, for the purpose of *converting* and *Christianizing* the African race, share and share alike;' and after certain pecuniary bequests, the residuary clause of the will, is as follows:

"'Item. The *remainder* of my estate, both real and personal, wherever situated, I give and bequeath to the before mentioned Isabella Rizer, Lucy Perry, Lucy Annan and Mary C. Perry, to be equally divided between them, share and share alike.'

"Mary Perry, the life-tenant, died some three or four years ago; and since the filing of the bill in this case, the

executors of the testatrix have sold the real estate in controversy. They are parties defendants, and they offer to bring the proceeds of sale into Court.

"To the bill in this case, certain parties claiming to be the trustees of the Mary Hoye School House, in Cumberland, have appeared and make claim; but as to the African Missionary Society, it has no representation, and it is conceded, that such society has no corporate existence whatever.

"The residuary devisees and legatees under the will also make claim to the proceeds of sale; and in this conflict of claim, the question is, to whom, upon the proper construction of the will, should the proceeds of the sale be awarded?

"The power of sale conferred upon the executors, and the bequests of the proceeds of sale to the trustees of the Mary Hoye School House *for educational purposes* and to the African Missionary Society, *for the purpose of converting and Christianizing the African race*, are clearly void; and being void, the real estate, the subject of the power, descended to, and became vested in the heirs of the deceased, at the time of her death, unless it be embraced by the residuary clause of the will. Neither the trustees of the Mary Hoye School House, nor the African Missionary Society, are incorporated bodies; and the objects of the testatrix's bounty are entirely too indefinite and uncertain to be enforced as trusts. How could a Court of equity ever correct any alleged abuses of the trusts, or determine as to the misapplication of the funds? And a still greater difficulty, who could claim to have such beneficial interest in the administration of the trust, as to be entitled to invoke a Court of equity for the prevention of the misapplication of the funds, or to correct abuses in their administration? Clearly, with objects so vague and indefinite in their nature, admitting of such a wide and undefined range of discretion on the part of

Rizer, *et al. vs.* Perry, *et al.* Howard, *et al. vs.* Perry, *et al.*

those intended to be intrusted with the funds, a Court of equity, without the extraordinary jurisdiction conferred by the Statute 43 Eliz., ch. 4, would be entirely power-less to enforce or control such a trust. And the Statute 43 Eliz., not being in force in this State, it is only such trusts as a Court of equity, by the exercise of its ordinary jurisdiction, can enforce, that are held to be valid. And the fact that the bequest is to trustees in no manner relieves the case of the difficulty, for the objection lies to the want of certainty and definiteness in the objects of the bounty, and the want of adequate power and jurisdic-tion to apply and execute the trust. For instance, upon what principle could the Court determine the nature and extent of the '*educational purposes,*' to which the fund bequeathed should be applied? What children, or class of children, or students, should receive the benefit of it; to what branches of education should it be applied, or to the payment of what expense incurred for the school? Questions such as these, and many others, might and would likely arise in the administration of the fund; and nothing short of an unrestrained and unlimited power and discretion in the trustees, as absolute as if they were real owners, could deal with or dispose of them, and that upon motives and reasons of their own, without any control whatever. Now, it is a well settled doctrine, that there can be no trust over the execution of which a Court of equity will not assume control; for an uncontrolable power of disposition or application would be virtual ownership, and not trust. 'If there be a clear trust, but for uncertain objects, the property that is the subject of the trust, is undisposed of, and the benefit of such trust must result to those to whom the law gives the ownership in default of disposition by the former owner.' *Per Sir* WM. GRANT, M. R., 9 *Ves.*, 400. And Lord ELDON, in his celebrated judgment in *Morice vs. Bishop of Durham*, 10 *Ves.*, 522, 539—says: 'It is a maxim that the execution

of a trust shall be under the control of the Court; *it must be of such a nature* that it can be under that control, so that the administration of it can be reviewed by the Court, or, if the trustee dies, the Court itself can execute the trust.' A trust, therefore, which, in case of maladministration, could be reformed, and a due administration directed; and unless the subject, *and the objects can be ascertained,* upon principles familiar in other cases, it must be decided that the Court can neither reform maladministration, nor direct a due administration, and consequently the trust would fail to take effect. There being no power or jurisdiction in the Court, to direct and control the execution of the trust, because the objects and purposes of it are too vague and indefinite, it is, for that reason, simply nugatory. Every trust, other than charities administered under the Statutes of Elizabeth, must have a definite object, and there must be somebody in whose favor, or upon whose application a Court of equity can decree faithful execution of the trust. And such being the plain requirement to the validity of the trust, there is no ground upon which either of the bequests to charities in this case can be supported.

"This doctrine has long since been established in this State, and it has been strictly adhered to in all subsequent cases.

"The same difficulties exist in this case, both in respect to the want of certainty and definiteness of the objects of the bequests, and the absence of means or power to preserve the fund in succession, for the purposes intended, that existed in the cases of *Dashiell vs. Attorney-General,* 5 *H. & J.,* 392; 6 *H. & J.,* 1; and *Needles vs. Martin,* 33 *Md.,* 609, and those cases are in all respects conclusive of this, so far as this particular question is concerned. See also *Wheeler vs. Smith,* 9 *How.,* 55, 80.

"But the questions, in regard to which there is the greatest contention, are those arising upon the claim of

the residuary legatees and devisees under the will.   They claim, in the first place, that by the direction to sell, there was such entire and complete conversion of the realty into personalty, as to entitle them, upon failure of the charitable bequests, to receive the proceeds of sale as money under the residuary clause of the will, and whether there be any real foundation for this contention, must next be determined.

"There is certainly nothing on the face of the will to indicate any intention or design of the testatrix that the proceeds of sale directed for the benefit of the charities, should, in any event, fall into the residuum, and pass, under the residuary clause of the will, as part of her personal estate; but all *apparent* intention is directly to the contrary.   She clearly supposed and intended that each and every devise and bequest in her will would and should be effective; and at most, there could be nothing more than mere conjecture or surmise as to what would have been her disposition of this particular part of her estate, if she had been advised at the time that her benevolent intentions, in regard to the charities, could not be made effective.   All that can be claimed, therefore, for the operation of the residuary clause, is only such property as may be embraced thereby, by strict legal construction of its terms, irrespective of any special or particular intent of the testatrix.

"Since the cases of *Cruse vs. Barley*, 3 *P. Wms.*, 20, and *Ackroyd vs. Smithson*, 1 *Bro. C. C.*, 503, and the many subsequent decisions made upon the authority of those leading cases, such a question as that raised here, as to the conversion, and the rights of the parties concerned, can hardly be regarded as one of any doubt or difficulty whatever.

"The leading idea in all such cases is, that where the testator directs real estate to be sold for special purposes, as in this case, if those purposes, or any portion of them,

become incapable of taking effect, the heir-at-law will take, for there is an end of the disposition, where there is an end of the purposes for which it was made; therefore, where land is directed to be sold, and converted into money, and the whole or part is given for a purpose, which fails by reason of illegality, the whole or part which, on this account remains undisposed of, results to the heir-at-law; as, for instance, where money to arise from the sale of land, is given to a charity, and the gift is void according to the Statute of Mortmain, or is otherwise limited so that the bequest is void, the heir is entitled. All the decisions concur in this general proposition. *Attorney-General vs. Ld. Weymouth, Amb.,* 20; *Gibbs vs. Rumsey,* 2 *Ves. & B.,* 294; *Jones vs. Mitchell,* 1 *Sim. & St.,* 290; *Amphlett vs. Parke,* 2 *Russ. & M.,* 24; 1 *Lead. Cas. Eq.,* (3rd *Am. Ed.,*) 809, 819.

"In this case, the only purpose whatever that the testatrix appears to have had in the direction to sell, was the production of a fund for, and its division between, the charitable objects mentioned in her will.   There is nothing to show that she intended the conversion to take place, not only for the special purposes mentioned, but for *all* purposes whatever, and as between *all* other parties who could, in any event, make claim.   But such an intent, in order to support the claim of the residuary legatees in a case like the present, must plainly and distinctly appear. The heir is not to be excluded in favor of either the next of kin or the residuary legatee, by mere implication or intendment.   Nothing less than clear, substantive and undeniable intent on the part of the testator will exclude him, and such an intent certainly does not appear from anything on the face of this will.

" As stated by Mr. Cox in his note to *Cruise vs. Barley,* the accuracy of which has been often approved and commended, the question in such case is, ' whether the testator meant to give to the produce of the real estate, the

quality of personalty *to all intents and purposes,* or only so far as respected the particular purposes of the will. For unless the testator has sufficiently declared his intention not only that the realty shall be converted into personalty for the purposes of the will; *but further,* that the produce of the real estate shall be taken as personalty, whether such purposes take effect or not, so much of the real estate, or the produce thereof, as is not effectually disposed of by the will at the testator's death, whether from silence or the inefficacy of the will itself, or from subsequent lapse, will result to the heirs.' And in the case of *Amphlett vs. Parke,* already referred to, the Lord Chancellor said : 'The general principle appears to be that the heir must be effectually displaced ; that he is not to be displaced by inference or implication, but that there must appear a clear, substantial and undeniable intent on the part of the testator to exclude heirs; otherwise neither can the next of kin, as being entitled under the Statute of Distributions, take from the executor, nor can residuary legatees, whether they be the executors or specific legatees of the residue, take more than that which is in its nature residue, to the prejudice of the claims of the heir-at-law.' Many other cases equally strong might be cited, but it is quite useless to extend the citations and references in support of the principle.

"It is only necessary to refer to the recent case in the Court of Appeals, in the matter of *Stonebraker's Will,* 49 *Md.,* 72, 104, where the principles, to the full extent that I have stated them, and the authorities to which I have referred, have been stated and fully proved. That was a case as between the heirs-at-law claiming by reason of the illegality of certain devises and bequests to charitable uses, and the residuary legatee, and it was held that the heirs-at-law were entitled.

"For the reasons I have stated, I am clearly of opinion that there has been no such conversion of the realty into

personalty, as to entitle the residuary legatees to receive it in the character of personalty, and as part of the personal estate of the deceased, embraced by the residuary clause of her will, according to the principle laid down in *Helms vs. Franciscus*, 2 *Bland*, 560; *Cox vs. Harris*, 17 *Md.*, 23, and many other cases to which reference could be made.

"It is contended, however, that notwithstanding there may be no conversion of the real estate into personalty, for the benefit of the residuary legatees, yet the property, in its quality of realty passed under the residuary clause of the will, to the residuary devisees, by force of sec. 309 of Art. 93, of the Code. But I cannot regard this contention as having any force or foundation whatever.

"By that section of the Code, founded upon the Act of 1849, ch. 229, the will is simply made to speak as of the time of the death of the testator, and in that respect changed the former rule of construction or operation of wills. But it has never been supposed that it was the design of that provision to pass the real estate of the testator, irrespective of his real intention. The real object of that provision, as of all legislation in regard to wills, is to enable the testator reasonably and effectually to control the disposition of what he may own at the time of his death. The design of the statute was to break up a former positive rule of the common law, and, in its stead, to substitute a principle by which the testator would be enabled, by the expression of his intention, either in express terms or by reasonable and fair implication, to dispose of all his real, as of his personal estate, to which he might be entitled at the time of his death. This is the full scope and object of the statute; and in accordance with such view of its meaning, have the Courts proceeded in the interpretation of wills made since its passage. *Rea vs. Twilley*, 35 *Md.*, 409.

"Now, in this case, as I have already stated, there is not the slightest ground for any reasonable implication, having respect to the real intention of the testatrix, as gathered from the face of the will, that the real estate in question was in fact intended to pass under the residuary clause. All the indications from the face of the will are to the contrary. It was said, in the case of *Lingan vs. Carroll*, 3 *H. & McH.*, 333, and quoted with approval in *Tongue vs. Nutwell*, 13 *Md.*, 427, in speaking of the effect of lapsed and void devises, that it was 'manifest in both cases, that the testator did not intend the land *de facto* devised to go to the residuary devisees;' and so it may be said in this case; and that being so, the rule established by the cases just mentioned, that when a devise of real estate is declared void, the heir-at-law, and not the residuary devisee, is the party entitled, fully applies. 13 *Md.*, 416; 49 *Md.*, 74, 105. And this well established rule is in no manner modified or affected by the 13th section of Art. 93, of the Code; but it remains in full force. In the case of *Deford vs. Deford*, 36 *Md.*, 168, the will (as appears from the record, though not from the case as reported,) was dated the 9th of November, 1867, and Mr. Deford, the testator, died in 1870, and the residuary clause of the will was of the most ample and comprehensive character, directing 'that the rest and residue' of the testator's large estate, consisting of both real and personal property, should be divided into five parts, for allotment among certain of his children. And, in the argument of that case, the able counsel on both sides fully conceded that, one of the devises being void, the real estate embraced in the void devise passed to the heirs-at-law, and not under the residuary clause of the will. And the Court, in passing upon the question, treated it as fully settled by the decision of *Tongue vs. Nutwell*, and therefore no longer an open question.

"The cases arising under the present English Statute of Wills, 1 Vict., ch. 26, can have no application, as

authorities, in this State, upon the question, even by analogy. By the 3rd section of that statute, the devising power of the testator is extended generally to all the real estate to which he may be entitled at the time of his death; and, by the 25th section, it is expressly provided, that unless a contrary intention shall appear by the will, real estate or the interest in real estate, comprised in any void or lapsed devise, shall be included in the residuary devise, if any. It is, therefore, no matter of construction, but of positive statute regulation, and our statute contains no such provision.

"In this case it appears the real estate, the subject of the charitable bequests, has been sold by the executors, but as those bequests have failed, and they were the only purposes for which the sale was directed to be made, the heirs-at-law took the real estate by descent in the condition in which it was left by the testatrix, and, consequently, the sale was made without legal object or power. *Smith vs. Claxton,* 4 *Madd.,* 484. Inasmuch, however, as one of the objects of the present bill is to have the property sold for distribution among the heirs of the deceased, and there is nothing appearing to impeach, in any way, the fairness of the sale that has been made by the executors, I shall ratify that sale, and direct the proceeds, together with all the rents received, to be brought in for distribution among the heirs. The fact that the sale was unadvisedly and erroneously made, will in no way affect the right of the heirs to receive the proceeds. The executors will be treated as trustees, holding the money to the use of the heirs-at-law. *Davenport vs. Cottman,* 12 *Sim.,* 610, 613."

From the decree passed to give effect to the conclusions, stated in the foregoing opinion, these appeals were taken.

The cause was argued before BARTOL, C. J., STONE, GRASON, MILLER and IRVING, J.,

*James E. Ellegood,* and *J. W. Thomas,* for the appellants, the residuary legatees.

Looking to the letter and spirit of the Act of Assembly, to analogy, or to the authorities, the residuary devisees must take this property as real estate. It is sought to restrict the statute's operation to after acquired realty. But upon what reason? There is no more "reference" to this class of property than to void devises. Then on what principle can words be interpolated to make the law read: "every last will shall be construed with reference to the (after acquired) real and personal estate comprised," &c.? Or how can the *Code* be made to read: "All the (after acquired) real estate which the testator had at the time of his death," or all the real estate which the testator had at the time of death, except such as he had made a void devise of? If that is what the legislators meant, why did they not insert it, and not make this statute a rule of construction? Could we not say with equal show of reason, that they meant the new rule to apply to void devises and insert words to that effect? The three instances, where a general residuary clause would not pass real property, were lapsed and void devises and future acquired estate. As to the former and latter, the authorities were uniform, and the other had been easily settled in Maryland. *Lingan vs. Carroll,* 3 *H. & McH.,* 333. Though "against the weight of authority elsewhere." *Tongue vs. Nutwell,* 13 *Md.,* 427.

Lapsed devises had been taken out of the rule in *special terms* by the Act of 1810, ch. 34. Now this Court is asked to say that the legislators only meant by this general rule of construction for "every will," to rescue after acquired realty, and leave void devises subject to a rule which had been established against the weight of authority. Does it not seem to be doing violence both to their intent and the language of the law, while a general residuary clause is said to be specific as to lapsed and void devises. A tes-

tator could in terms provide for a lapse or failure, but a will being in the nature of a present conveyance, a testator could not, in express terms, devise real property to be subsequently acquired by him.  *Canfield vs. Bostwick*, 21 *Conn.*, 550, 616.

The latter rule is broken up, even as to a *general residuary clause*, by force of implication, or "construction," says the learned Judge in *Alexander vs. Worthington*, 5 *Md.*, 471; *Wilson vs. Wilson*, 6 *Md.*, 487.   Why is it not also as to void devises?   "The language of a statute is its most natural expositor."

The original Act says: the "real and personal estate comprised" in the will.   This real estate is "comprised" within the express terms of the will, while after acquired realty is only "comprised" by implication.   The Code says: "all the real estate which he *had* at the time of his death."   Of course the testatrix *had* this property at her death, and the language is peremptory, "shall."   Then if the testatrix had the property at her death, and the residuary clause is comprehensive enough to include it, can there be but one result.   This interpretation is not *strained*, but consists with the words of the law, and the most reasonable intent of the legislators; it is repugnant to *no* rule of law, and defeats *no* intention of the testatrix, but on the contrary effectuates "the intention manifest on the face of the whole will to devise her whole estate." (Judge BARTOL's dissenting opinion in *Johns vs. Hodges*, 33 *Md.*, 515.)

Judge LE GRAND in *Alexander vs. Worthington*, 5 *Md.*, 471, says: "We must infer that the legislative intent was to prescribe a *new rule of construction*, which should apply to *every case* of a will, unless a contrary intent appear. *The law not only confers on the testator a new power or capacity, but clothes the will with a new operative quality.* Thus far the Massachusetts and Maryland authorities are coincident in their object and effect."   We shall see here-

after the "effect" of the Massachusetts statutes.   The
Judge showed, by comparison, how much stronger the
Maryland Act was than the Massachusetts.'

By analogy also, this construction should be given to
the will.   "A residuary bequest, it is well-known, operates
on *all* the personal estate of which a testator is possessed
at the time of his death, and *consequently includes all
specific legacies which are void."* 1 *Jarm. on Wills, (Big
Ed.,)* 645 *and* 762; *Brown vs. Higgs,* 4 *Ves., Jr.,* 708.

On what other reason than that of analogy to the com-
mon law rule of a residuary clause, operating on after
acquired personal property, because the will spoke as of
the death of the testator, could the Court in *Alexander
vs. Worthington,* have held by "construction" merely
that the statute · had changed the old rule as to after
acquired realty?   As *void* bequests of personal property
also fell within the same common law rule, and for the
same reason, must not void devises by the "new opera-
tive quality" given wills by the statute, fall within the
operation of the statutory rule.

Was the new rule to operate on all the real and per-
sonal estate comprised in the will, or only a part, and if
only a *part,* to what extent was it to take "effect," and
how is the rule to be applied?   If the legislators meant
it to apply only to after acquired real estate, did they mean
also to take *void* bequests of personalty out of the old rule,
and give them to the next of kin?   Of course not.   Then
why was the word "personal" inserted in the Act.   Can
the "legislative intent" be made consistent on any other
hypothesis than that the will *is* to have a *like* "effect"·
on all *real and personal* property, *cessanti ratione legis,
cessat lex.*

The Code applies to *"all real estate."*   In Maryland,
the question is still an open one, though we are not with-
out authorities in other States.   Much reliance has been
put on *Cox vs. Harris,* 17 *Md.,* 31; *Rea vs. Twilley,* 36

*Md.,* 409; *Deford vs. Deford,* 35 *Md.,* 179, as making it *res adjudicata.*

Judge LE GRAND says, a question become *res adjudicata* when there has been an *application* of the judicial mind to it, when the *very point* has been thoroughly examined, &c.   *Alexander vs. Worthington,* 5 *Md.,* 471.

It can hardly be said the very point was thoroughly examined when it was not made in any of the above cases. In *Cox vs. Harris,* only personal property was in dispute, and the remarks of the Court were purely *obiter dicta.* In *Rea vs. Twilley,* the question was whether the residuary clause was comprehensive enough to include the real estate.

No one referring to *Deford vs. Deford,* can say there was examination of, and decision upon the effect of the statute or Code when applied to the operation of a residuary clause on a void devise of real estate.   In the report of the case, the *date* of the will does not appear, nor the *terms* of the clause, nor any allusion to the statute.   The learned counsel for the appellants, *admit* that the "decree that there was an intestacy as to the realty is unobjectionable," therefore, there was no appeal *on* that point. While the case may be regarded as an affirmance of the principle of the *common law* laid down in *Lingan vs. Carroll,* and *Tongue vs. Nutwell,* it can hardly be acceptable as an examination and decision of a point not made, or the construction of a statute not referred to.

The authorities of other States, clearly support the view of these appellants.   The New York statute is similar in language to ours.   That of Massachusetts, like most of the other States, is an enabling Act conferring on the testator "capacity" of devising after acquired real property.

The New York Act reads: "Every will that shall be made by a testator in express terms, of all his real estate, or in other terms denoting his intent to devise all his real property, shall be *construed* to pass all the real estate

which he was entitled to pass at the time of his death," The Massachusetts statute reads as follows: "Any estate, right or interest in lands acquired by the testator after the making of his will, shall pass thereby in like manner as if possessed at the time of making his will, if such shall clearly and manifestly appear by the will to have been the intention of the testator."

Every case we have been able to find, with the exception of *Warring vs. Warring,* 17 *Barb.,* 552, decides that the distinction between real and personal property in this respect, is abolished by the various statutes. The above case puts its decision on the ground that "the revisors stated their object was to pass after acquired property.". But in *VanKleck vs. Dutch Church,* 20 *Wind.,* 457; see the opinions of COWEN, J., and Senator Wager.

*Parker vs. Bagardus,* 5 *N. Y.,* 309, &c., the Court says: "Before the adoption of the Revised Statutes, a *distinction* existed between legacies of personal property, and devises of real estate." And it also holds the Act to be a rule of *construction,* if it were not, the Legislature would have passed an Act expressly declaring that after acquired land should pass.—p. 312.

In *McNaughton vs. Same,* 34 *N. Y.,* 204, it is said: "A general devise of real estate has *now the same effect* with a general bequest of personal property." . *Pond vs. Bergh,* 10 *Paige,* 149; *Pruden vs. Pruden,* 14 *Ohio,* 253; *Brewster vs. McClean,* 15 *Conn.,* 290; *Canfield vs. Bostwick,* 21 *Conn.,* 554.

In the latter case it is said: "There is now no difference between 'real and personal property.'" See *Wilson vs. Watson,* 4 *Scam.,* 67; *Loverein vs. Lampley,* 2 *Foster,* (*N. H.,*) 446; *Smith vs. Curtis,* 5 *Dutch.,* 345; *Fluke vs. Fluke,* 1 *Green,* (16 *N. J.,*) 480; *Shreve vs. Shreve,* 2 *Stockton,* 384.

The case of *Patterson vs. Sevallon,* 44 *Penn.,* 486, was a contest between the heir and residuary devisee being

void for uncertainty. Judge WOODWARD said: "It may be said with considerable confidence, that the diligent student will find the old distinction between lapsed and void legacies and devises, so far as regards the operation of the residuary clauses, has been taken away in Pennsylvania by our Revised Statute of 1833, and *in other States*, and in England by statutes that have followed; and that since the statute, *the heir never takes* either a lapsed or *void* legacy or *devise*, if the residuary clause is sufficiently comprehensive to embrace it. No presumption of an intent to die intestate as to any part of the estate, is to be made where the words of the testator will carry the whole estate." In *William vs. Neff*, 52 *Penn.*, 329, the same doctrine is announced, and on *page* 337 the Court declares, *Patterson vs. Sevallon*, to be *"sound law." Drew vs. Wakefield*, 54 *Me.*, declares that the *distinction* is abolished by the Revised Statute of 1841. The text books are to the same effect as the adjudged cases. 4 *Kent's Com.*, (7th Ed.,) 542.

Mr. Kent says, "The alteration of the law in New York, Virginia, and other States, making the devise operate upon all the real estate owned by the testator at his death, may produce the effect of *destroying* the application of some of these distinctions, and give greater consistency and harmony to the testamentary disposition of real and personal estates."

In *Redf. on Wills*, (*Ed. of* 1864,) *page* 379, it is said, "a will speaks from the death of the testator, and not from its date, hence, a devise of personal property, generally carries all the testator had at the time of his death. The *same rule now* prevails generally in this country as to *real estate.* And see *Ibid, page* 385, note 22. 1 *Jarm.*, (*Big. Ed.*,) 646, *note* 1. Also 1 *Jarm.*, (*Rand. & Tal.*, Ed., 1881,) 636, *note* 8; *Brown vs. Higgs*, 4 *Vesey, Jr.*, *note b.* Also, 4 *Vesey, Jr.*, (*Sum. Ed.*,) 802—*Kinnell vs. Abbott, note b ;* 2 *Redf. on Wills*, 174, *ch.* 1, *sec.* 8; 1

*Redf.*, 388, *note and authorities.* Among the decisions: construing the Massachusetts statute are: *Prescott vs. Prescott,* 7 *Met.,* 141; *Cushing vs. Alwyn,* 12 *Met.,* 175; *Pray vs. Waterman,* 12 *Met.,* 265; *Winchester vs. Foster,* 3 *Cush.,* 368; *Thayer vs. Willington,* 9 *Allen,* 295; *Allen vs. White,* 97 *Mass.,* 507.

As we have seen, the law placing void and lapsed de-vises, and after acquired realty under the same rule, which gave the property to the heir, rests on the rule, that a residuary devise, however *general* in its *terms,* is. *specific* in its *nature,* and in turn, is based on the rule, which interprets the intention of the testator as to his realty, as of the date of his will. Now, if the mere statutory *power* given in some States, of devising real estate obtained after the date of the will, has changed the law throughout, how can it be doubted, that an express. enactment which changes the rule of interpreting the intention of a testator from the *date* of the will to his *death,* as to all his real estate, ought to have as large an operation? Can it be said the Maryland statute only has the effect of making a residuary clause *general,* as to after acquired real property, and that it remains *specific* as to void devises.

A rule about which there has been such contrariety of opinion and conflict of authority, a rule established in this State, "against the weight of authority," a rule that now has no reason at the bottom of it, ought not longer to be adhered to, when by following the spirit and letter of the statute, "greater consistency and harmony can be given to the testamentary disposition of real and personal estate." The Maryland legislators without adopting all the details of 1 Vic., ch. 26, incorporated the very gist of it, by taking the 24th sec., *verbatim,* except that the words, "immediately *before* the day of the death of," &c., thereby intending to meet all the essential requirements of a will by change of the time of interpreting the testa-tor's intention.

Rizer, *et al. vs.* Perry, *et al.*  Howard, *et al. vs.* Perry, *et al.*

(Argument on the other questions omitted.—REP.)

*William Brace,* for the appellants, the trustees of the Mary Hoye School House.

*J. H. Gordon,* for the appellees, the heirs-at law of Mrs. Hoye.

It is contended on the part of the residuary devisees, that the devise of this property to the trustees of Mary Hoye School, for educational purposes, and to the Missionary Society, being void, still, under the provision of the Code, Art. 93, sec. 309, Rev. Code, Art. 49, sec. 13, Mrs. Hoye could not die intestate as to this property.—And, because, according to their view, she could not die intestate, the residuary clause must be made effective by giving the property to the claimants under it.

This section of the Code is taken from the Act of 1849, ch. 229, and was intended to change the rule of interpretation by which a testator was presumed only to intend to dispose of such property as he owned at the time of executing his will.  And the presumption, since the passage of the Act, is that he intends not only to dispose of property existing when the will is made, but all after acquired property which he may have at the time of his death.

The first section of the Act of 1849, provides: "That every last will and testament, executed in due form of law, after the first day of June next, shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed on the day of the death of the testator or testatrix, unless a contrary intention shall appear by the will."

The section of the Code leaves out the latter words, and is as follows: "Every last will and testament executed in due form of law, after the first day of June, 1850, shall pass all the real estate which the testator had at the time of his death."

If this interpretation of the residuary devise is right, this section of the Code would prevent a testator who has executed a will in due form of law, from leaving any portion of his real estate undisposed of notwithstanding that there was a clear intention shown by the will to do so, even if the will provided expressly that it should descend to his heirs-at-law. It would also change the well established rule of law, that when a testator devises by will any portion of his real estate to his heir-at-law, so that the heir would take the same estate by the will that he would take by inheritance, he shall be held to take by inheritance, and not under the will.

But the case of *Stannard vs. Barnum,* 51 *Md.,* 440, settles this question. The testatrix in that case, Mrs. Barnum, died in 1866, after the adoption of the Code, and it was decided with reference to its provisions. That case, like this, was one in which the residuary devisees claimed against the heirs-at-law. And it was contended in that, as in this case, that the property had been converted into money.—But the Court of Appeals says, "*the will operated only to dispose of the money belonging to the testatrix, arising from her annuity, and that she died intestate of all her interest and estate in the hotel property.*" And it went to the heirs-at-law.

This case settles the doctrine that the intention of the testator still prevails, notwithstanding the charge made by the Court. And, as Mrs. Hoye, by her will, had attempted to make another disposition of this property, which failed, it is clearly shown that she did not intend to give it to the residuary legatees, and only intended to take it from the heirs for the particular purpose, which failed, and that failing, it goes to the heirs.

The Court of Appeals had this question before them in the previous case of *Johns vs. Hodges,* 33 *Md.,* 515, and in that case establish the rule for the construction of this 309th sec., of Art. 93, of the Code. On page 523, they say:

"The language of sec. 309, of the Code, is not precise nor full, but leaves much for construction." * * * "There is no doubt, in the construction of the Code, careful examination of the pre-existing legislation, and the judicious construction is necessary," &c.    At page 533, Judge BARTOL, speaking of this section, meets the very question presented here, with an unanswerable objection, in the following words: "If understood literally, its effect would be to make every will pass the real estate of the testator, without regard to its provisions, whether they relate to real estate or not, and to prevent the possibility of any one who leaves a will duly executed, to die intestate of his lands.    Such a construction would be wholly inadmissible; the provision, as all agree, must be interpreted in that respect in conformity with the pre-existing law, and whether real estate passes under the will or not, must depend, not exclusively on the words of the Court, but on the terms of the will itself."

In the case of *Barnum's Will*, 26 *Md.*, 119, the Court of Appeals held the devise of the hotel property *void*, because it created a perpetuity in the trustees.    At page 174, the Court says: "If the clauses already referred to, and analyzed with the residuary clause, constituted the entire will, the devise of the trust being *void*, the testator would be held to have died intestate of his hotel property."    It would not pass by the residuary clause, under the ruling of this Court, in the case of *Tongue vs. Nutwell*, 13 *Md.*, 415.

The Statute of Victoria provides by express words, "that unless a contrary intention shall appear by the will, any devise of real estate which shall fail by lapse or otherwise, shall be included in the residuary clause, if any is in the will."    And this is a clear indication of the legislative mind of England, that it would not be included in the residuary clause, without that clause in the statute. And when we consider the careful manner in which such

statutes are proposed and passed by Parliament, such a legislative interpretation of the law ought to have great weight.

[Argument on the other questions omitted.—Rep.]

Irving, J., delivered the opinion of the Court.

There are two appeals in this case taken by different parties in antagonistic interests, and both claiming against the heirs-at-law of Mrs. Mary Hoye, in whose favor the decree of the Court below was passed. The case therefore presents a tripartite contest. The trustees of "The Mary Hoye School House" insist that the Court below was in error in declaring a certain legacy to them, void. The other appellants, who are the residuary legatees and devisees under Mrs. Hoye's will, contend there was no error in declaring that legacy void, but that there was error in disregarding their claim, as the residuary legatees and devisees, to the proceeds of the void legacy or devise, (whichever it may be regarded,) and in giving the same to the heirs-at-law of Mrs. Hoye. The clauses of the will involved in this case, and the facts which raise the controversy, are sufficiently set out in the opinion of the Judge who decided the case below. The questions involved are so fully and clearly discussed in that opinion, and concurring as we do in the conclusions reached, we should add nothing to its reasoning, but for the earnest reliance of the counsel for the residuary legatees and devisees, in this Court, upon the 309th sec. of Art. 93 of the Code, as abolishing *all distinctions* between real and personal property as respects the operation of the residuary clause of a will. The argument in favor of that position was very ably presented; and at the hearing we were strongly impressed by the authorities cited from other States where statutes like our own prevail, and doubted whether our own decisions, pronounced since the

passage of the Act of 1849, which gives the section
referred to in the Code, and without the point having
been made, ought to be followed.    After a careful ex-
amination of all the authorities cited, and others that were
not cited, we find the decisions in the other States upon
that question are by no means uniform; but on the con-
trary are very conflicting.    The preponderance, if any,
being we think in favor of upholding the distinction, so
far as lapsed and void legacies are concerned, where the
statute has not in express terms provided for them.    In
some of the States void and lapsed devises are held to
stand on different foundations, and are to be controlled by
a different rule.    Following *Doe, Lessee of Stewart vs. Shef-
field*, 13 *East*, 526, and *Morris vs. Underdown, Willes*, 293, it
has been held that devises void from the beginning, pass
with the residue under the residuary clause; whilst lapsed
devises having been good when made, but becoming inop-
erative for after arising causes, should not so pass, unless
expressly so directed by statute.    *Patterson vs. Swallow*,
44 *Penn.*, 486; *Ferguson's Lessee vs. Hodges*, 1 *Harring-
ton*, 524.    Our decision of *Lingan vs. Carroll*, 3 *H. &
McH.*, (353,) 333, is referred to in those cases, and cited
as counter authority which could not be followed.    The
doctrine of *Lingan vs. Carroll* was again re-asserted in
*Tongue vs. Nutwell*, 13 *Md.*, 415, in *Deford vs. Deford*,
36 *Md.*, 168, and in *Orrick and Wife vs. Boehm*, 49 *Md.*,
105; and that must still be the law of this State, unless
the 309th sec. of Art. 93, which does not appear to have
been brought to the attention of the Court in those cases
compels a departure from the ruling in those cases.

The language of our statute is very broad and general,
and if it would not disturb the authority of decisions
already rendered, in the face of the statute which it was
the duty of the Court to know, and of which the Court
did know and had passed upon in other aspects, (though
it was not, as appears, especially brought to their atten-

tion in those cases,) we should incline to follow the rulings in Massachusetts and New Jersey, where they have statutes similar to our own; New Jersey's statute being almost *verbatim,* the same.   But to follow the decisions in *Prescott vs. Prescott,* 7 *Metcalf,* 141, *Thayer vs. Willington,* 9 *Allen,* 295, and *Smith vs. Curtis,* 5 *Dutch.,* 345, and other cases in those States of like import, would unsettle the law as it has been held and acquiesced in in this State since 1849, when the law was passed, and long before; and would be according to the statute an object and effect not heretofore ascribed to it or understood.   Some of the cases cited, fully sustain the contention of the residuary devisees, that in those States statutes like ours have been held to *entirely abrogate* the distinction between real and personal property so far as the operation of a will on them is concerned. In Pennsylvania and New York, however, where similar statutes exist, an entirely different conclusion has been reached.   There, in the absence of a section like the 25th sec. of 1 Vict., ch. 26, the Courts have held, that the old distinction was not wholly destroyed, but it applied only to after acquired property.   *Massey's Appeal,* 88 *Pa.,* 470; *Waring vs. Waring,* 17 *Barbour,* 552; *Vankleeck vs. Dutch Church,* 20 *Wendell,* 469.

The cases of *Patterson vs. Swallow,* 44 *Pa.,* 486, *Williams vs. Neff,* 52 *Pa.,* 329, and *Yard vs. Murray,* 5 *Norris,* which were relied on so confidently by the appellants, the residuary devisees, and which cases announced a similar doctrine to the decisions of Massachusetts and New Jersey, already cited, have been unqualifiedly overruled by *Massey's Appeal,* 88 *Pa.,* where the Court say, that the statements of the Judge, in those cases with respect to the effect of the statute, were entirely aside the question before them; and adjudged the statute to have no such effect as was ascribed to it.

The cases from Ohio, Illinois, New Hampshire and Maine, cited in argument, were all cases where after

acquired property was involved, and the decisions went no further than to construe and decide the effect of the statutes thereon. We have been able to find but one other case (outside the States where the 25th section of 1 Vic., ch. 26, has been adopted,) where a question similar to the one presented here has been considered, and that is *Tatum vs. McLellan,* 50 *Miss.,* 1, where it was held that the heir took a void devise. In that State after acquired property may pass by the will.

The decision of *Tongue vs. Nutwell,* was rendered upon a will long antedating the Act of 1849. But the cases of *Deford vs. Deford,* 36 *Md.,* and *Orrick and Wife vs. Boehm,* 49 *Md.,* were upon wills made after that Act was operative. In *Deford's Case* it was a concession of counsel on both sides, that void devises went to the heir-at-law; and it is true that the mind of the Court does not appear to have been drawn to the possible effect of the Act of 1849, ch. 229. But in *Rea vs. Twilley,* 35 *Md.,* 409, the construction of the Act of 1849, and its effect upon devises of after acquired property, was before the Court, and the Court said, that standing alone, the residuary clause was comprehensive enough to carry the after acquired property; but that it would appear from the whole will, the residuary clause was not intended to embrace real estate, and that the heir was not to be disinherited unless the intention was clearly shown. It re-affirmed the doctrine, therefore, that the presumption was in favor of the heir-at-law, notwithstanding the Act of Assembly under consideration. It was, to that extent, therefore, the assertion of exactly the contrary doctrine contended for by the appellants, (the residuary devisees,) whose contention is, that the statute changes the presumption, and shifts the onus. The effect of the decision in the *Rea and Twilley Case,* is to re-assert the presumption in favor of the heir, and to re-state the doctrine that the intention is the main object of search in the construction of wills. In none of

the cases in this Court involving the construction of the Act of 1849, ch. 229, from *Magruder & Frick vs. Carroll*, 4 *Md.*, 335, to *Rea vs. Twilley*, 35 *Md.*, has it been suggested that the Act had any other object or effect than to give to wills the effect of carrying after acquired property, if the terms of the will were sufficiently comprehensive, and a contrary intent was not apparent in the will. The point now made and relied on, has never before been made in this Court.   As it does not appear in the will, that the testatrix desired the residuary devisees to take the property in question, and, as is said by the Judge of the Circuit Court in his opinion, a different intention being naturally inferrible from the effort to give the property to other persons, and devote it to a charitable object, we do not feel warranted by force of the statute alone to say, that the void devises pass to the residuary devisees.   For the reasons stated by the Judge of the Circuit Court, and these in addition thereto, we must affirm the decree.

*Affirmed with costs,*
*and cause remanded.*

(Decided 3rd March, 1882.)


STONE, J., dissented as to the construction of the Act of 1849, ch. 229.